LENA SCHWEICKHARDT, Appellant, *vs.* JAMES H. CHESSEN
*et al.* Appellees.

*Opinion filed April 21, 1928.*

1. PRINCIPAL AND AGENT—*what agreement is an agency contract and not a contract for the sale of land.* Although a written contract recites that it is an "agreement for the sale of land * * * or may be termed a contract for the sale of land," it is but an agency contract where the agent is required to plat and sell the land, retaining "for his services rendered" all money received above a certain price per acre, and where it is expressly provided that he is not required to buy any unsold property; and a provision requiring the owner to make and sign deeds to the agent whenever presented cannot be construed as a contract giving him the right to compel the owner to deed him any of the property for his own benefit at the stipulated price.

2. SAME—*agent to sell land cannot compel specific performance of contract with purchaser.* An agent to sell property is not entitled to a decree requiring specific performance by his principal of a contract of sale which he makes with a purchaser where the purchaser is not a party to the proceeding or asking any relief.

3. CONTRACTS—*parol evidence not admissible to modify written contract.* Where parties have reduced their agreement to writing all prior negotiations leading up to the execution of the contract are merged therein, and parol evidence is not admissible to explain, contradict, enlarge or modify the writing as executed.

4. SAME—*what necessary for reformation of a contract on the ground of mistake.* To warrant the correction or reformation of a written agreement on the ground that because of a mistake it does not represent the agreement of the parties, the mistake must be one of fact and not of law, must be mutual. and common to both parties and must be proved by clear and satisfactory evidence; and it must also appear that the party seeking reformation of the contract was free from negligence.

5. SAME—*written contract not under seal may be subsequently varied by parol agreement.* A written contract not under seal may be subsequently varied by a verbal agreement founded on a proper consideration, and where parties to a written contract of agency for the sale of land differ as to the powers conferred on the agent a subsequent verbal agreement acted upon by the parties will be binding although it modifies the terms of the written contract.

6. SAME—*when fiduciary relation exists.* A fiduciary relation is not limited to cases of trustee and *cestui que trust,* guardian and ward, attorney and client, or other recognized legal relations, but it exists in all cases where confidence is reposed on one side and a resulting superiority and influence on the other, regardless of the origin of the confidence, and a court of equity will investigate the dealings between the parties according to the rules which apply to such relation.

7. ACCOUNTING—*when principal is entitled to an accounting of agency to sell land.* An owner of property who employs an agent to plat and sell the land as platted into lots, the agent to retain all proceeds above a stipulated price, is entitled to an accounting notwithstanding her bill for reformation of the contract is dismissed and relief is granted on the agent's cross-bill, where the agent occupies a fiduciary relation towards the owner, the amount owing to the latter is in dispute and there is a prayer for general relief in the bill.

APPEAL from the Circuit Court of Madison county; the Hon. GEORGE A. CROW, Judge, presiding.

JOHN B. HARRIS, for appellant.

WILLIAM P. BOYNTON, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Madison county granting the relief prayed in the cross-bill filed by appellee James H. Chessen on a certain contract hereinafter set out and dismissing appellant's original bill praying reformation of the contract and cancellation of certain other purported contracts as to certain property therein described and for an accounting and general relief.

Appellant, then Lena McIntosh, was the owner of sixty acres of land adjacent to or within the village of Wood River. On October 22, 1917, she entered into the following contract with Chessen:

"Agreement for the sale of land in section 22, township 5 N., R. 9, or may be termed a contract for the sale of land.

"Whereas Lena McIntosh, a single lady, of the township of Wood River, county of Madison, State of Illinois.

"Said Lena McIntosh is desirous of·having said land platted into town lots, therefore in consideration of two thousand dollars in hand paid, I, Lena McIntosh, agree to make and sign deeds whenever presented by same and to make same to James H. Chessen or whomever he shall designate or whom he has sold the property to. The land taken by this contract consists of 32-69/100 acres and the amount that Lena McIntosh shall receive from the sale of this land is one thousand dollars per acre ($1000). This agreement or contract to be for a term of two years from above date, that is to say, that said contract will expire on the 22d of October, 1919. James H. Chessen who is the other party to the contract with Lena McIntosh and who is paying the two thousand, agrees as follows, to-wit: To proceed with the land and get same laid out into town lots as quickly as is possible to do so, and to sell same, and all moneys that may be received from the sale of said lots to be paid over to Lena McIntosh on or before the 10th day of each succeeding month until such time as she shall have received the sum spoken of in paragraph No. 1, that is, $1000, one thousand dollars, per acre. The two thousand dollars paid down to be credited on the purchase price of the lots and to be charged to Lena McIntosh in the regular monthly statements until the lots so sold shall equal an amount of the money so paid down, and then the statement to be shown in the regular way.

"All money that are received over and above the $1000 per acre to belong to Chessen for his services rendered. And at the end of said term said Chessen shall be free to turn back to Lena McIntosh all unsold property, and same shall be credited at $1000 per acre, and nothing shall be construed in this agreement to make Chessen buy the unsold lots, or to be at any further expense to sell same and contract shall be declared ended, null and void. It is the intention of Chessen in platting the land to get five lots to the acre.

"Lena McIntosh agrees to pay her part of the expense, which is as follows: The outline survey of the entire tract, the abstract to the land, and the acknowledgments of all the deeds as the same are requested by Chessen. And the interests on the $2000 for a term of 60 days, as that money was advanced.

"Chessen is hereby granted permission to sign the agreements for deeds to purchasers as agent for Mrs. Lena McIntosh.

"Said Lena McIntosh agrees to sign the plat of the land without delay, and also the deeds when same are asked for.

JAMES H. CHESSEN,
LENA McINTOSH."

Chessen then had the 32.69 acres described in the contract surveyed and platted into lots, blocks, streets and al-

leys. Appellant signed the plat and the same was recorded. Chessen began the sale of lots, signed contracts as agent for appellant, prepared the deeds and sent them to her to be executed. She executed all deeds presented to her until October 17, 1919, five days before the expiration of the contract according to its terms. On that date Chessen sent her a deed conveying blocks 18 and 19, at a consideration named in the deed of $4708, to appellee Wilbur Gerke, together with a check for that amount. Appellant at that time was living in Oran, Missouri. This deed appellant refused to sign and came to Wood River to see Chessen, and told him that it was their understanding that these blocks were reserved to her. She testified that arrangements had been previously made with Chessen that she was to be allowed to keep these blocks; that the agreement was that she be allowed to reserve blocks 13, 14, 18 and 19; that Chessen, after such agreement, had sold block 13; that she objected to that as being against their agreement, but she had been induced by his advice and urging to sign a deed for block 13 with the understanding that block 18 be substituted therefor in the reservation to her and that blocks 14, 18 and 19 would not be sold by him. After a conference with him as to the sale of blocks 18 and 19, without reaching an agreement, she filed the original bill in this case, and later filed an amendment thereto, asking that the contract be removed as a cloud upon her title to the lands for which she had not given deeds and for an accounting of the lands for which she had signed deeds.

Appellant's amended bill alleges that she had known Chessen for more than thirty years and imposed implicit trust and confidence in his honesty, integrity and probity; that she had directed him to plat the south 20 acres of her 60-acre farm but permitted him to reduce their contract to writing without carefully examining the same and without obtaining legal advice or opinion pertaining thereto, but relying solely upon her implicit trust and confidence in him

she signed the contract; that the contract called for the platting of 32.61 acres instead of 20 acres, as she intended; that the additional 12.61 acres comprised blocks 13, 14, 18 and 19, lying north of the west portion of the 20-acre tract; that when she discovered that 32.61 acres had been platted she called to his attention their agreement that the plat was to contain but 20 acres and reminded him that she had told him that she desired to reserve the remainder for her children, but that he explained to her that he had no idea of selling these blocks or any part thereof but had had the same platted so that the street known as First street might be extended northerly through the farm, as a street car line was to be constructed on First street, which would greatly enhance the value of all the lots; that shortly after making the contract she married Charles Schweickhardt and thereafter moved from Wood River, living a portion of the time in Texhoma, Oklahoma, and later in Oran, Missouri; that she was away from Wood River during the time the contract was in force; that she received reports from time to time with reference to the sale of lots and received remittances of money and statements from him; that she relied solely upon him and did not pay close attention to the amounts she was receiving or what deeds were presented to her; that after Chessen had informed her that he had sold block 13 and requested that she execute a deed therefor she became suspicious that he was not looking after her interests, but she was later induced to sign the deed for block 13 on his promise that no attempt would be made to sell blocks 14, 18 and 19, as she desired to retain those for her daughter; that a few days prior to the expiration of the contract Chessen entered into a pretended contract with Wilbur Gerke for blocks 18 and 19; that said contract was not *bona fide* and was merely colorable, for the purpose of obtaining title to that property and defrauding appellant out of the same.

The answers of Chessen and Gerke deny that it was appellant's intention to plat but the south 20 acres of her farm; deny taking undue advantage of her; deny any agreement that she was to reserve blocks 13, 14, 18 and 19 or any part thereof; admit that appellant imposed implicit trust and confidence in Chessen and in his honesty and integrity, but aver that he in every respect lived up to the confidence imposed in him in his transactions with her. Chessen also filed a cross-bill, praying that appellant be required to execute a deed to Gerke for blocks 18 and 19 and a deed to him for block 14 of the described premises. Gerke was not a party to this cross-bill.

The cause was referred to the master in chancery, who took the evidence and reported that appellant is not entitled to the relief prayed in her amended bill and that Chessen is entitled to the relief prayed in the cross-bill. Exceptions to the master's report were overruled by the chancellor, and a decree was entered requiring that appellant execute a warranty deed to blocks 18 and 19 to Gerke; that she execute and convey a deed conveying lots number 13 and 14 in block 14 to Eugene J. Reilley, and that she convey the balance of block 14 to Chessen; that these conveyances are to be made upon the payment to her by Chessen of the sum of $7355, less the cost of the proceeding.

Appellant contends that the contract in question was an agency contract, and that there was, prior to its execution and subsequent thereto, an understanding and agreement between herself and Chessen that she was to retain blocks 13, 14, 18 and 19 for herself; that subsequently Chessen induced her to part with block 13, but that at no time did she ever consent to dispose of the balance of the blocks. She also contends that Chessen is not entitled to have block 14 transferred to himself, and that he made no sale of it which she was bound to recognize.

The property platted comprised nineteen blocks. On the north end of blocks 18 and 19 11.61 feet lie north of

an east and west section line and do not belong to appellant. These strips are owned by Chessen. It is conceded that on the expiration of the contract blocks 8, 9, 10, 15, 16 and 17 were turned back to appellant. All other lots and blocks platted, aside from blocks 14, 18 and 19, were sold by Chessen and deeds made therefor by appellant. The controversy in this case therefore arises over blocks 14, 18 and 19.

The question first presented is as to the construction of the contract. Appellant contends that it is an agency contract. Appellees argue that it is a contract of sale, which gave to Chessen the right to take over the property, or any part thereof, if he saw fit to do so, and required that appellant make deeds to him, or to anybody whom he should nominate, upon payment to her of the sum of $1000 per acre. The contract in the third paragraph contains this language: "In consideration of $2000 in hand paid, I, Lena McIntosh, agree to make and sign deeds whenever presented by same and to make same to James H. Chessen or whomever he shall designate or whom he has sold the property to." The contract is inartificially drawn. It may be here observed that as to the $2000 named as consideration it is admitted that Chessen did not produce or pay that amount but that he assisted appellant to borrow that sum, and that she paid interest thereon and re-paid the principal out of the sale of the lots.. The contract also provides in the fifth paragraph that at the end of the term Chessen is to be free to turn back to appellant all unsold property, and that nothing in the agreement shall be construed to require him to buy the unsold lots or to be at any further expense to sell the same but the contract shall be ended, null and void. It clearly appears that if this be construed as a sales contract it is unilateral and unenforcible, as it does not bind Chessen to buy any of the property. It is not contended that it is an option contract. The duties of Chessen, as provided by the contract, are, that he lay out the property in town

lots and sell the same and pay over to appellant before the tenth of each succeeding month all moneys that may be received from the sale of the lots, until she shall have received the sum of $1000 per acre. The $2000 stated in the contract to have been paid down was to be credited on the purchase price of the lots and charged to appellant in regular monthly statements until the lots sold equaled that amount of money, and "then the statement to be shown in the regular way." These comprised Chessen's obligations and duties under the contract. His compensation is described as follows: "All money that are received over and above the $1000 per acre to belong to Chessen for his services rendered." The contract in next to the last paragraph also provides: "Chessen is hereby granted permission to sign the agreements for deeds to purchasers as agent for Mrs. Lena McIntosh." It seems clear from the language of the contract that it was an agency contract, and the language thereof by which appellant agreed to make and sign deeds to Chessen, "or whomever he shall designate or whom he has sold the property to," is to permit the taking of title in Chessen's name for the convenience of purchasers to whom he, as agent, had sold the property, and cannot be construed to be a contract giving him the right to compel appellant to deed any of the property to him for his benefit.

The next question presented on this record is whether Chessen may compel appellant to make deeds in accordance with sales which he claims he has made of the property. He contends in his cross-bill, and his testimony is, that he sold blocks 18 and 19 to Wilbur Gerke. He offered in evidence a copy of a contract for the sale of those blocks to Gerke which was not signed. On objection to its admissibility on that ground, the master permitted it to be introduced in evidence on the promise of counsel for appellees that a signed contract would be put in evidence. This was not done and the unsigned copy of the contract was wholly incompetent. Gerke was put on the stand and testified that

he had agreed to take blocks 18 and 19 and had paid Chessen $100 but that he did not sign a written contract so to do. Gerke is not a party to the cross-bill and is not asking that appellant be required to convey to him. That an agent to sell property, under a contract of this character, is not entitled by such contract to a decree requiring specific performance by his principal of a contract of sale which he makes with the customer, assuming such was made, is too clear to require argument. His acts in making sales were the acts of an agent, for which he could in no way be personally bound to the customer. In this case the purported customer is not seeking relief. This is not a case where the agent is seeking to recover commissions on *bona fide* sales made by him which his principal refuses to carry out. As to block 14, Chessen testified that he had made some sales in that block, but he does not say to whom. The decree finds that he had contracted to convey two lots in said block to Eugene J. Reilley and directs that appellant so convey. There is no evidence in the abstract of any such contract on his part. He does not contend that the record contains such evidence. No such contract is offered in evidence. The decree also requires that the balance of block 14 be conveyed by appellant to Chessen. If Chessen did make a contract of sale to Reilley he cannot compel specific performance of such contract by appellant for the benefit of Reilley, who is not a party to the proceeding or asking any relief, and, for reasons hereinbefore stated, Chessen is not entitled to purchase the property for himself under the contract. It is clear, therefore, that the circuit court erred in decreeing specific performance as prayed in the cross-bill.

We come, then, to the issues raised on the prayer of the original bill of appellant: that the contract be reformed; that any purported contracts which Chessen may have made with others for the sale of lots in blocks 14, 18 or 19 be declared null and void and canceled; and that appellant be accorded an accounting.

Counsel for appellees argues that appellant seeks by parol evidence to vary the terms of a written contract, and that such may not be done. The rule is, that when parties reduce their agreement to writing all prior negotiations leading up to the execution of the contract are merged therein, and parol evidence is not admissible to explain, contradict, enlarge or modify the writing as it existed when executed. The writing, when executed, becomes the repository of the agreement between the parties. (*Davis* v. *Fidelity Fire Ins. Co.* 208 Ill. 375; *Weaver* v. *Fries,* 85 id. 356.) Appellant urges that this evidence is introduced for the purpose of reforming the contract. In order to warrant the correction or reformation of a written agreement it must appear that it did not represent the agreement of the parties at the time it was executed; that the contract in its present form is, in effect, a mistake. In order to justify the reformation of a written contract upon the ground of a mistake such mistake must be one of fact and not of law, must be mutual and common to both parties to the instrument and must be proved by clear and satisfactory evidence. (*Rexroat* v. *Vaughn,* 181 Ill. 167; *Sutherland* v. *Sutherland,* 69 id. 481; *McDonald* v. *Starkey,* 42 id. 442; *Cleary* v. *Babcock,* 41 id. 271.) It must also appear that the party seeking reformation of the contract was free from negligence. (*National Fire Ins. Co.* v. *Spry Lumber Co.* 235 Ill. 98.) There is no evidence in the record tending to show a mutual mistake, but appellant's evidence tends rather to show that she signed the contract by reason of her confidence that Chessen would not sell these blocks. We are of the opinion that the record does not justify a reformation of the contract.

It is also contended that after making the contract it was agreed between the parties that appellant should be permitted to reserve blocks 13, 14, 18 and 19. It cannot be doubted that a written contract not under seal may be subsequently varied by parol, and the terms of such contract may be dispensed with by a verbal agreement founded on

a proper consideration. (*Morrill* v. *Colehour,* 82 Ill. 618; *Cooke* v. *Murphy,* 70 id. 96; *Bishop* v. *Busse,* 69 id. 403; *Low* v. *Forbes,* 18 id. 568.) Appellant testified that in the course of her conversations and conferences with Chessen during the life of the contract he agreed that blocks 13 and 19 should be retained by her, and that he marked off these blocks on a blue-print of the plat with a red pencil; that she frequently saw that blue-print hanging in his office with blocks 13 and 19 marked in this manner, and that he stated they were so marked because they were not to be sold but to be kept for her. In this she is corroborated by her daughter, Eula Fitzgerald, and by the latter's husband, R. I. Fitzgerald, and John Wickenhouser, all of whom testified that they saw hanging in the office of Chessen the plat with blocks 13 and 19 marked off by a red pencil. Two of these witnesses testify that Chessen told them these blocks were not to be sold. Chessen was ordered to produce the plat in evidence, and he produced a plat which showed no such markings. These witnesses, however, testified that it was not the plat which they saw hanging in his office. There is also in evidence a letter from Chessen to appellant in which he promises to draw a deed to certain of the lots in block 19 to her son, Frank. Frank thereafter died, and Chessen testified that appellant, after Frank's death, told him to sell block 19. She denies this. We are of the opinion that the evidence shows that the parties to the contract, after the execution thereof, varied its terms by verbal agreement, and that it was so acted on by both until five days before its expiration, when Chessen sought to have appellant transfer blocks 14, 18 and 19. Though it is admitted that these blocks, with block 13, are the most valuable of the tract, Chessen made no attempt to sell blocks 18 and 19 until the contract was about to expire. The sale of block 13 was, as we have seen, against appellant's wishes. There is no evidence of any attempt to sell block 14 other than Chessen's general statement that he sold some lots there to dif-

ferent persons. It seems unnatural that he would have made no effort to sell the most valuable lots when his commissions were all above a fixed price per acre for the land. The reasonable deduction from all the evidence on this matter is that the contract was varied and so treated. The consideration for this change lay in releasing Chessen from the further duty and responsibility of selling that property. We are of the opinion, from a review of the evidence, that Chessen had no right to contract to sell blocks 18 and 19 aside from the north 11.61 feet of these blocks, which strips belong to him, neither does the evidence show a valid contract to sell them to Gerke. Gerke testified that he signed no contract to purchase those blocks and no such contract was produced in evidence. Such a contract, if it was made, was but a parol contract for the sale of real estate and was within the Statute of Frauds and unenforcible. As to block 14, there was no evidence of any contract for the sale of any part of it to Reilley. There is therefore no evidence of a valid contract entered into by Chessen, as agent of appellant, for the sale of any part of block 14. There being no evidence of valid contracts outstanding as to any of this property, there is no subject matter upon which a decree requiring the cancellation of such contracts can operate. Courts will not require the doing of a useless thing. Appellant's prayer for the cancellation of any outstanding contracts cannot, therefore, be decreed.

Concerning appellant's right to an accounting, she testifies that she does not know whether the statements of account rendered by Chessen are correct; that she relied on his honesty and integrity and did not question his statements when made to her. Her counsel contends that the evidence shows that a fiduciary relation existed between the parties, and that by reason of her confidence in him she accepted without protest the payments of money which he sent to her in accounting for land sold. The abstract contains evidence of various statements rendered by Chessen to appellant con-

taining numerous items of payments of money by him in matters not arising under the contract for which he took credit. Chessen testified that in addition to the sum of $4708, for which he claims to have sold blocks 18 and 19, he still owes appellant $883 and that he had made no complete statement to her prior to the trial. She testified that the item of $14.50 which Chessen claims to have paid on behalf of her son was not authorized by her but such payment, if made, was contrary to her directions. This item was not covered by the contract and the record before us indicates that he was not authorized to pay it. There is much evidence in the record that a confidential relationship existed. Chessen admits in his answer that appellant placed implicit trust and confidence in him. A fiduciary relation is not limited to cases of trustee and *cestui que trust,* guardian and ward, attorney and client, or other recognized legal relations, but it exists in all cases where confidence is reposed on the one side and a resulting superiority and influence on the other side arises therefrom. The origin of the confidence is immaterial. It may be moral, social, domestic or merely personal. If the confidence in fact exists, is reposed by one party and accepted by the other, the relation is fiduciary, and equity will regard the dealings between the parties according to the rules which apply to such relations. (*Rubin* v. *Midlinsky,* 321 Ill. 436; *Higgins* v. *Chicago Title and Trust Co.* 312 id. 11; *Bordner* v. *Kelso,* 293 id. 175.) The evidence shows that these parties had been close friends for more than thirty years; that other real estate men sought to procure the privilege of platting the property in question but that appellant chose Chessen because of the confidence she had in him. He was her agent. He transacted for her affairs and business arising during the term of the contract in matters other than the sale of this land, such as a general survey of her land and paying bills charged against her son, Frank, credit for which he took in his accounts to her of sales. She was, and is, entitled to a full accounting

from him as her agent concerning all his transactions with her money and property. The evidence as to these transactions is confusing. We are of the opinion that she is entitled to an accounting concerning them.

The decree of the circuit court is reversed and the cause is remanded, with directions to dismiss Chessen's cross-bill and to order an accounting of the transactions between the parties, as prayed in appellant's amended bill.

*Reversed and remanded, with directions.*