Pearl Byrne, a/k/a Pearl Boghosian, Plaintiff-Appellant, v. Mutual National Bank of Chicago, Executor of the Estate of Mateos Boghosian, Deceased, as Trustee Under Trust No. 1973, Elizabeth Sparks, Paul Boghosian, Betty Sparks Winfield, and Helen Sparks McHale, Individually and as Trustees, and Thomas Sparks, Defendants-Appellees.

Gen. No. 51,235.

First District, Third Division.

December 7, 1967.

 

Emanuel Morris, Heller & Morris, and Jerome H. Torshen, of Chicago (Emanuel Morris and Jerome H. Torshen, of counsel), for appellant.

Murphy and Kinnerk, of Chicago, for appellees.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

Complaint was filed in the Circuit Court of Cook County by plaintiff, Count I of which sought specific performance of an alleged oral agreement made by Mateos Boghosian during his lifetime to will all of his property to plaintiff, and to reach property in possession of Mutual National Bank of Chicago, as Trustee under Trust No. 1973, an inter vivos trust created by Mateos Boghosian, and the proceeds of certain alleged joint bank accounts maintained by Mateos Boghosian with his daughter or granddaughter. By Count I of the complaint the plaintiff sought to recover the property in the inter vivos trust, the bank accounts and proceeds therefrom withdrawn by the individual defendants, beneficiaries or recipients of said property. Counts II and III of the complaint were actions at law. The court ordered that Count I of the complaint be tried separately and referred Count I to a master in chancery.

The corporate defendant (trustee) filed its answer in which it stated that it had no knowledge as to whether or not the deceased, Mateos Boghosian, had or had not made an oral promise to will his property to the plaintiff in exchange for her services in maintaining his household and performing other services for him.

The individual defendants in their answer denied that Mateos Boghosian during his lifetime had made an oral promise or had entered into an oral agreement with the plaintiff to make her the beneficiary of his property by will. These defendants also answered by stating that such alleged contract would violate the Statute of Frauds and set forth the reasons therefor.

465

A short summary of the facts necessary to an understanding of this case, follows:

On June 24, 1944, Mateos Boghosian, the deceased, married Pearl Byrne, also known as Pearl Boghosian, the plaintiff. On February 20, 1956, the plaintiff obtained a divorce in Dixon, Illinois. From the time of the divorce until March of 1958 Mateos Boghosian was required to pay the plaintiff $80 per month. The master found that in April 1958, the plaintiff took up residence at the home of Mateos Boghosian, at his repeated requests, for the purpose of taking care of him, by acting as his housekeeper, nurse and companion, and for the further purpose of assisting him in the care and management of his several properties. There is a dispute at this point as to whether, as claimed by the plaintiff, when she moved into the new bungalow of Mateos Boghosian in the summer of 1958, she was to take care of him and in exchange for her services was to receive money, room and board, or whether he promised her he would will his property to her. When the plaintiff moved into the bungalow she brought certain furniture with her and lived with Mateos Boghosian until his death on February 28, 1964, except for two short periods of time. While living with Mateos Boghosian she took care of him as well as his property from time to time and in exchange for these services received room, board and various sums of money. At the outset she received $10 per week. She also collected $100 per month from the boarder at 7654 South Lowe during the years 1961, 1962, 1963 and 1964, and $60 per month from a one-room furnished apartment at 7656 South Lowe in 1962, and $15 per week from another apartment at 7656 South Lowe in 1962 and 1963. At the time Mr. Boghosian owned two apartment buildings, one bungalow and a vacant lot.

The defendants' testimony indicated that the major part of the maintenance work was performed by the son and grandson of the deceased, as well as by one James

McHale. The evidence offered on behalf of the defendants tended to show that during much of the time the plaintiff lived with the deceased and was supposed to care for his needs she was engaged in outside employment; that the granddaughters Betty Winfield and Helen McHale cared for a good bit of his personal needs.

All of the real estate owned by the deceased was in a land trust created prior to the time the plaintiff began living with him in 1958. He reserved a life estate in himself and the beneficiaries of the trust were his relatives, Paul Boghosian and Elizabeth Sparks. Plaintiff at no time had any interest in the land trust. Mateos Boghosian also had certain bank accounts before and during the time the plaintiff lived with him. These accounts were held in joint tenancy with himself and his granddaughter, Helen McHale. One account contained the name of a daughter, Elizabeth Sparks, as joint tenant with himself and his granddaughter. Plaintiff had no interest in any of Mr. Boghosian's bank accounts.

On November 19, 1951, while plaintiff was living with Mateos Boghosian, he executed a will which made no provision for the plaintiff. Witnesses for defendants testified that many times during the period that plaintiff was living with Mateos Boghosian, Mr. Boghosian made statements to the effect that plaintiff was not to share in his estate after his death. The plaintiff offered testimony to the effect that her ex-husband had promised her that he would will his property to her in consideration of her taking care of him and his property as long as he lived.

After a complete hearing before the master, the master prepared his report. Objections to the report were filed by both plaintiff and individual defendants. The master's report found, in part, the following:

> "8: That the Plaintiff had rendered valuable service to the deceased, Mateos Boghosian, from the date of April, 1958 to the date of his death, February 28,

1964, as alleged in her said Amended Complaint and with respect to compensation for such services, she has an adequate remedy at law.

"9: That Plaintiff has not proven, through her testimony, or that of her witnesses, that she has suffered a fraud by the failure of the deceased to make a Will in her behalf. . . ."

After discussing the law of specific performance, the master concluded and recommended that a decree be entered denying the plaintiff equitable relief for specific performance, and that the plaintiff, having rendered valuable services, had an adequate remedy at law.

██ The plaintiff argues that the master found that there was an oral contract to make a will, and having so found, he should have recommended the entry of a decree for specific performance. We do not agree that any such specific finding was made by the master. The finding of the master is ambiguous.

In the objections filed by the plaintiff to the master's report she did not call this ambiguity to the master's attention. The objections were overruled by the master and by order of court were permitted to stand as exceptions. Of course, this ambiguity was not called to the attention of the judge and the court approved the report of the master and dismissed Count I of the complaint for want of equity.

The plaintiff argues that since the findings of the master in paragraph 8 of his report showed that the plaintiff had rendered valuable services to the deceased "as alleged in her said Amended Complaint" that that is sufficient to show that there was an oral promise to make a will. However, the plaintiff could have rendered valuable services, as alleged in her amended complaint, without having proven to the satisfaction of the court than an oral promise was made by the deceased to will his property to her. Furthermore, the statement "as alleged in

468

her said Amended Complaint," in our opinion, referred only to her allegations as to services performed by her and did not refer to a promise allegedly made by the deceased.

The master further found that the plaintiff had not proven through her testimony or that of her witnesses that she had suffered a fraud by the failure of the deceased to make a will in her behalf. That finding cannot be construed to support the plaintiff's theory that there was an oral contract.

The courts have repeatedly held that where an objection is not made before the master, nor preserved by way of exceptions before the court, the master's report is conclusive on the parties. See Velde v. Schrock, 253 Ill App 274; A. A. Erickson Bros., Inc. v. Jenkins, 41 Ill App2d 180, 190 NE2d 383; Fischer v. Slayton & Co., Inc., 10 Ill App2d 167, 134 NE2d 673.

Since the court has approved the report of the master and no objection was made or exception preserved by the plaintiff to the master's failure to make a definite finding as to whether or not there was an oral promise made by the deceased to the plaintiff, to the effect that the deceased would will his property to the plaintiff in consideration of services to be rendered by the plaintiff, the master's report is conclusive on the parties.

Since the master failed to find that there was an oral promise and since the master's report was approved by the court in its decree, the decree must be affirmed.

Decree affirmed.

SCHWARTZ and DEMPSEY, JJ., concur.