THOMAS A. DODGE, Respondent v. STEPHEN L. CHILDERS, Appellant.

Kansas City Court of Appeals, December 9, 1912.

1. **REAL ESTATE AGENTS: Contract: Revocation.** Where the contract of employment of a real estate agent to find a purchaser for land contains no provision limiting the duration of the agency, the law will imply an agreement for the performance of the service within a reasonable time after the lapse of which either party would have a right to terminate the relation by giving notice to the other.

2. ———: **Revocation of Agency: Commission.** The revocation of an unlimited agency to sell real estate after the agent had procured a purchaser for the land, will not defeat the claim to a commission where the owner subsequently accepts the offer made by the purchaser procured by the agent.

3. **NEW TRIAL: Specifying Ground.** Sec. 2023, R. S. 1909, expressly provides that every order allowing a new trial shall specify of record the ground or grounds on which the new trial is granted.

Appeal from Sullivan Circuit Court.—*Hon. Fred Lamb,* Judge.

AFFIRMED.

*John W. Bingham, Earl F. Nelson* and *W. H. Childers* for appellant.

*D. M. Wilson* and *John W. Clapp* for respondent.

JOHNSON, J.—Plaintiff sued to recover a commission for services performed in the sale of a farm owned by defendant in Sullivan county. The petition states that in the month of October, 1910, defendant "placed the said farm in plaintiff's hands to sell or exchange for him at and for the sum of not less than $47.50 per acre, and agreed to pay plaintiff the sum of fifty cents per acre for selling or trading the same at that price per acre, and agreed in addition to pay him the one-half of all that said land brought over and above $47.50 per acre. That the plaintiff found a purchaser in one W. O. Swearengen of said county and that said farm of 700 acres was sold to said Swearengen for $48 an acre and that a deed was made by said defendant and his wife on the 6th day of March, 1911, for said 700 acres and that the said Swearengen is now the owner and in the possession thereof. That thereby the defendant became indebted to plaintiff in the sum of $525 and that the said sum was and is justly due from defendant to plaintiff; but that although the plaintiff has demanded of defendant the sum of $525 the defendant has refused and still refuses to pay plaintiff the said sum of $525 or any part thereof."

The principal defenses interposed by the answer are, first, that plaintiff is not entitled to maintain the action as an individual plaintiff for the reason that he was not employed in that capacity but as a member of a partnership and, second, that defendant revoked the agency of the partnership before a purchaser ready, willing and able to purchase the farm on the terms proposed had been procured.

A reply in the nature of a general traverse of these affirmative defenses was filed by plaintiff and the issues raised by the pleadings were tried and submitted to a jury. A verdict for defendant was returned and in due time plaintiff filed a motion for a new trial which alleged errors in the rulings on questions of evidence and in the instructions given the jury and further alleged that the verdict was against the weight of the evidence. The court sustained the motion and granted a new trial but failed to state the ground of the ruling in the order. Defendant appealed.

Plaintiff is the owner and publisher of a newspaper in Milan, the county seat of Sullivan county. Defendant owned a farm of 700 acres six or seven miles from Milan. Sometime before the events in controversy he had removed to Oklahoma and resided on a farm in the vicinity of Helena in Alfalfa county. He wished to sell his farm in Sullivan county and visited Milan in October, 1910, partly for the purpose of effecting a sale. He had employed his brother, W. H. Childers, a lawyer in Milan as his agent but no purchaser had been found. During the visit to Milan he had an interview with plaintiff in which, according to the testimony of the latter, he agreed to employ plaintiff to advertise the farm and agreed that if a purchaser should be procured by such means who would buy the farm at $47.50 per acre to pay plaintiff a commission of fifty cents per acre, and if a higher price should be obtained, to pay an additional com-

mission equal to one-half the excess of the purchase price over $47.50 per acre. The agency of W. H. Childers was not revoked and it was agreed that plaintiff should turn over to him the answers received by plaintiff to the advertisements and Childers should, thereafter, conduct the negotiations with prospective buyers for which service he should receive a commission from defendant equal to that of plaintiff in the event their combined efforts produced a purchaser.

The evidence of defendant contradicts that of plaintiff only as to the details of the employment of the latter. The fact that plaintiff's services were enlisted is not disputed but defendant says he employed his brother to sell the farm at the price stated, agreed to give him a commission of one dollar per acre if he procured a purchaser on the terms proposed, and that plaintiff was employed to assist his brother and was to share his brother's commission in case their joint efforts proved successful. Neither party claims that plaintiff was to receive a commission if his services in advertising the farm did not procure a purchaser and as we understand defendant's version of the tripartite agreement, W. H. Childers would have been entitled to receive the full commission had he procured a purchaser without the aid of plaintiff's services in advertising the farm and was required to share the commission with plaintiff only in the event of the purchaser being procured through the medium of plaintiff's services.

Before proceeding further with the statement of the facts of the case we shall pause to dispose of the contention of defendant that plaintiff was a partner of W. H. Childers and, therefore, cannot maintain this action which is prosecuted for the enforcement of an individual demand. In the instructions to the jury given at the request of defendant, the learned trial judge treated the question of partnership or no partnership as involving an issue of fact and authorized

the jury to return a verdict for defendant on the hypothesis presented by defendant's evidence relating to that issue. We think this was an erroneous view to take of the evidence. The mere fact, if it be a fact, that plaintiff (if his services proved effective), was to share the commission with W. H. Childers, is not conclusive evidence of a partnership agreement. Plaintiff was employed to render a special service and his employment was merely auxiliary to that of Childers. The agency of the latter was more general, of a wider scope, and was accorded rights in which the lesser agency had no participation. There was no mutual agreement between plaintiff and Childers to share all the profits that might be realized from the subject matter of the agency of the latter but only such profits as might accrue from plaintiff's service. Without an agreement to share the profits derived from both sources the contract lacked a fundamental element of a partnership agreement. Plaintiff was employed to render individual service and the question of partnership or no partnership raised by the pleadings involves no issue of fact.

It is suggested that if plaintiff and Childers were not partners, nevertheless, they were joint contractors with defendant. We do not think so. The obligation of defendant, as stated by himself, was not to pay the commission to the two agents jointly but to his brother alone, with the understanding that his brother would employ plaintiff and divide the commission with him if he procured a purchaser. Defendant testified that in reply to plaintiff's application for employment he said: "I will make arrangements with Hez (W. H. Childers) to sell the place and anything that you and him does is all right with me." This tends to disprove the cause of action pleaded in the petition founded on the alleged employment of plaintiff by defendant on terms including a direct obligation of defendant to pay plaintiff a stated commission, but it

does not tend to prove the existence of a joint obligation of the promisor to two or more promisees which is an essential element of a joint contract.

The evidence discloses that plaintiff advertised the farm in each issue of his paper and turned over to W. H. Childers the answers received by him. Prompted by one of these advertisements a Mr. Swearengen called on W. H. Childers in December, 1910, and inquired about the terms of sale. On being informed that the price was fifty dollars per acre, Swearengen refused to buy at that price and exhibited no further interest in the subject until February 25, 1911, when he again called on Childers and offered forty-eight dollars per acre for the farm on condition that a farm of 160 acres owned by him be accepted as part payment of the purchase price. Childers told him to put his offer in writing and mail it to defendant. Swearengen did so and mailed the letter that evening to defendant at Helena, Oklahoma. Two days later, i. e., February 27, defendant mailed letters at Helena addressed respectively to plaintiff and W. H. Childers revoking the employment of each and withdrawing the farm from the market. There is a sharp dispute between the parties over the fact of whether defendant mailed these letters before or after he received Swearengen's letter. Defendant says he had no knowledge of Swearengen's proposal at that time and that he was prompted to withdraw the farm from sale on account of the near approach of another crop season and his decision to work the farm himself. In a day or two after he mailed the letters he went to Milan and within a week after Swearengen had mailed his offer, defendant accepted it in person and afterward the sale was consummated.

The instructions given the jury at the request of defendant express the idea that defendant had the right to revoke the agency if he acted in good faith and not in furtherance of a purpose to deprive plain-

tiff of a fairly earned commission. These instructions correctly state the rule applicable to one of the controverted issues of fact. There is evidence introduced by defendant to the effect that in the early part of February, perhaps two weeks before the reappearance of Swearengen with his offer, defendant mailed a letter to W. H. Childers in which he withdrew the farm from the market and dismissed his agents. Childers testified that immediately after receiving that letter he advised plaintiff of its contents. Plaintiff denies this statement and says he received no such notice of the termination of the agency. It was proper to send this issue of fact to the jury with the direction to return a verdict for defendant on the acceptance of defendant's version of such notice of revocation. The contract of employment contained no provision limiting the duration of the agency and, therefore, the law would imply an agreement for the performance of the service within a reasonable time after the lapse of which either party would have a right to terminate the relation by giving notice to the other. The rule recognized in this State thus is stated in LaForce v. University, 106 Mo. App. l. c. 523: "The law is that even where there is no specific time named as limiting the agency, and a reasonable time elapses without a sale (circumstances considered), the owner may, in good faith, without design to avoid payment of commission, revoke the agency and sell to the party with whom the agent had been negotiating." (Citing cases.) To the same effect is the decision of the Supreme Court in Loving v. Cattle Co., 176 Mo. l. c. 351.

At the time in question, Swearengen, though moved to inquire of Childers about the farm by the efforts of plaintiff, had apparently abandoned the idea of purchasing and when the notice of revocation was communicated to plaintiff, it could not be said that his services had been fruitful. He had not procured a customer ready, willing and able to buy the farm on

the terms proposed, or on terms acceptable to defendant. And a reasonable time for the performance of the contract having elapsed defendant had the right to revoke the agency and, thereafter, without incurring liability to his discharged agents, might sell the farm to any purchaser he could find, including Swearengen.

But we think the instructions deal in an erroneous and prejudicial manner with the attempt of defendant to revoke the agency by his letter to plaintiff mailed at Helena on February 27, 1911, two days after Swearengen had mailed his proposal to buy the farm. On the hypothesis of plaintiff's evidence that this letter of defendant was his first expression of a purpose to terminate the agency, we do not perceive any just ground on which the notice contained in the letter may be used to defeat plaintiff's claim to a commission. If defendant mailed the letter after receiving Swearengen's proposal such attempt to discharge his agent in the face of negotiations initiated by the agent and about to be successfully concluded could not be regarded otherwise than as an act of bad faith towards the agent and, as such, would not be suffered to deprive the agent of his just reward. On the other hand, if defendant's letter was mailed before he received Swearengen's letter or had knowledge of its contents, he would be relieved of the imputation of bad faith, but his subsequent acceptance of Swearengen's offer entitled plaintiff to receive his commission on the ground that he had fully performed the contract of agency at a time when it stood unrevoked and in full force. The transaction of the sale of the farm had its beginning in the offer of Swearengen to purchase on terms acceptable to defendant and the acceptance of that offer by defendant marked the successful culmination of the transaction. The task plaintiff was employed to perform was to procure a purchaser ready, able and willing to buy the land on the terms proposed

or on other terms satisfactory to defendant. He had performed that task before the attempted revocation of the agency and defendant will not be permitted to accept the fruits of the agency contract and then to repudiate its burdens.

. The errors in the instructions we have discussed justified the ruling sustaining the motion for a new trial and we shall assume that the ruling was prompted by the considerations to which we have given expression. We deem it our duty to remind the court that in failing to comply with the request of counsel for defendant to state in the order the ground on which the new trial was granted, the court disobeyed the express command of the statute (Sec. 2023, R. S. 1909) that "every order allowing a new trial shall specify of record the ground or grounds on which said new trial is granted."

The judgment is affirmed. All concur.