**EVANS  v.  JACOBSON et ux.**

No. 21987.

Kansas City Court of Appeals.

Missouri.

June 7, 1954.

Russell D. Farris, Richmond, Harry A. Hall, Kansas City, for appellants.

Gresham, Boughan & Whipple, Walter J. Gresham, Kansas City, for respondent.

DEW, Judge.

Plaintiff sued to recover a commission for the sale of defendants' residence property. The judgment of the court, sitting without a jury, was in plaintiff's favor in the sum of $625. Defendants have appealed.

The essence of plaintiff's petition is that as a licensed real estate broker he was employed about December, 1950, by the defendants, owners of a residence property in Kansas City, Missouri, to sell the same on terms to be arranged by defendants and any prospective buyer; that defendants agreed to pay plaintiff a commission of 5% if the property was sold to any person to whom plaintiff might introduce them; that he did introduce the defendants to Willie J. and Ever Lee Warren, his wife, who signed an agreement to pay defendants $12,500 for the property; that defendants and the buyers, by collusion, for the purpose of defrauding plaintiff of his commission, falsely represented to him that defendants were unable to obtain a loan of $5,000 on the property, and that they were terminating negotiations; that thereafter the defendants and the buyers completed the purchase for $12,500, and defendants executed a deed accordingly; that plaintiff is entitled to his commission of $625, for which he prayed judgment against the defendants.

.Defendants answered by way of a general denial, and alleged further that if any sale was made, the contract pleaded by plaintiff was no longer in effect because it has been revoked by defendants, giving notice to that effect, and by a lapse of·a reasonable time from the granting of a nonexclusive listing of said property. Defendants deny that plaintiff was the procuring cause of a purchaser for defendants' property, ready, willing and able to purchase same on the terms fixed by defendants.

According to the evidence the defendants owned the residence property in question. It was located in a section of the city which was undergoing a rapid transition from white occupancy to colored, and many sales were being made in the locality. Some time in October or November, 1950, Merle Greene, a real estate salesman, had shown the property to Mr. and Mrs. Warren. At that time the Warrens did not desire to purchase the property upon terms requiring them to finance a first mortgage. Some time prior to December 5, 1950, the plaintiff requested of the defendants an exclusive listing of their property and was given a listing, but not an exclusive one. At that time the defendants explained that they desired an early sale in order that they might make a purchase of other residence property, and needed a down payment for that purpose. They stated their terms to be $12,500, acceptable $2,500 in cash, $5,000 in proceeds of a first mortgage loan to be placed upon the property, and the remaining $5,000 as a second mortgage on installments. Thereafter, plaintiff's salesman advertised the property and on December 5, 1950, was contacted by the Warrens, from whom the salesman obtained their signatures to a proposed real estate contract to purchase defendants' property on the terms above outlined. However, the defendants did not sign this contract because they were not assured that the first mortgage would be obtained. The plaintiff's salesman orally agreed to assist the Warrens in obtaining the first mortgage loan.

According to plaintiff's evidence he and his agent made several attempts to negotiate a first mortgage loan on the property, and in so doing had the full co-operation of the defendants and the Warrens, but were unable to obtain such a loan. In the latter part of December, 1950, defendants notified plaintiff that his agency was terminated. The exact date of this notification was not shown by the plaintiff's evidence. On December 29, 1950, the Warrens demanded a refund of their $500 deposit and the plaintiff sent them his check for same. A month or so thereafter the plaintiff noticed the record of the sale of defendants' property to the Warrens on the same terms for which he had been authorized to sell it to them. He thereupon wrote the defendants, demanding a commission, which the defendants failed to pay, and the instant suit was begun. The evidence showed that on December 27, 1950, through the agency of Merle Greene, a real estate broker, the defendants had entered into a written contract with Willie J. and Ever Lee Warren for the sale and purchase of the property in question on substantially the same terms for which the plaintiff had been authorized to sell. It is not denied that defendants paid to Merle Greene $625 as a commission for the sale.

According to the evidence, Merle Greene had several times stated to the defendants that he could obtain a loan on their property, but when, on December 27, 1950, he sought to close a deal with the Warrens on the same property, defendants questioned whether Greene could procure such a first mortgage loan for $5,000. Thereupon, Greene arranged with a private lender in Kansas City to purchase such a mortgage when made and to furnish defendants with a signed commitment of the lender to that effect. By the commitment, the lender agreed in writing to purchase for $5,040, a first mortgage in the sum of $5,600, if and when made on the property, subject to examination of title. Upon this assurance the defendants then signed the contract with the Warrens dated December 27, 1950, negotiated through Merle Greene, agent.

As to defendants' notice to the plaintiff of the termination of his agency, the plaintiff could not fix the exact date. Both he and

his salesman said it was in the latter part of December. But defendant John W. Jacobson testified that about a month after plaintiff was given a listing they told plaintiff's agent to cease his efforts "because he had admitted to us, my wife and I, that it was impossible for them to get a loan". He said it was in the "latter part of December". He said Merle Greene talked to them about getting a commitment for a loan "after I had discharged the Evans Realty Company, through Mr. Toomey". Thus the only positive evidence on the issue of whether the agreement through Greene was entered into before the termination of plaintiff's agency, was defendant John W. Jacobson's testimony that it was "After I had discharged the Evans Realty Company".

Pertinent to the plaintiff's charge against defendants of bad faith, false representations and fraudulent misrepresentation, his agent testified:

"Q. As a matter of fact, the Jacobsons were very anxious to see you succeed and get the sale? A. Yes, they were.

"Q. Did you at any time tell them this was your first real estate transaction and you wanted to make good at it? A. Yes, sir.

"Q. And you do tell the Court, do you not, that they were very co-operative with you? A. They were, yes

"Q. They were anxious to see you benefit from the sale? A. That's right.

"Q. Didn't they do everything in their power to help you secure the benefit of the sale? * * * A. They wanted to see that I made the deal. * * *

"Q. They wanted you to make the deal. A. Yes.

"Q. They had friendly feelings toward you? A. That's right

"Q. In fact, you were exerting all your efforts to consummate this real estate transaction on the basis of the December 5, 1950 offer to purchase, were you not? A. Yes.

"Q. Until you were notified the latter part of December—A. (Interrupting) What is that again?

"Q. You were exerting all your efforts to sell the property for them upon the December fifth proposed offer, until you were notified that a plan had been submitted through another agent? A. Yes.

"Q. That was the latter part of December? A. Yes."

Regarding the failure of the Warrens to obtain a $5,000 loan to close the deal during plaintiff's agency, the plaintiff's agent testified:

"Q. Did you find it difficult to obtain a loan of at least $5,000.00 on the property? A. Yes. That is what threw a monkey wrench in the deal.

"Q. That is what threw a monkey wrench in the deal? A. Yes.

"Q. If you could have found any one to loan at least $5,000.00 on the property, Mr. Toomey, you and Mr. Evans would have reaped the benefit of the commission, would you not? A. That's right".

Mr. Toomey, plaintiff's salesman, also testified that the Warrens had demanded back their $500 deposit. He said: "Mr. Evans and I agreed to send it back to them since we couldn't get anyone to loan us $5,000.00 at that particular time". The plaintiff testified that he sent the refund by check on December 29, 1950, which, he said, would probably be the date it was demanded. He denied he was ever told beforehand that a loan was available to the Warrens through Merle Greene.

For the plaintiff to recover under his special contract, it was his duty to prove full compliance with its terms. Jones v. Hill, Mo.Sup., 18 S.W.2d 382; Clarkson v. Standard Brass Mfg. Co., 237 Mo.App. 1018, 170 S.W.2d 407. According to the testimony of the plaintiff's agent, defendants had stipulated the terms of the sale which plaintiff later incorporated into the proposed contract of December 5, 1950,

signed by the Warrens at the plaintiff's solicitation, and that one of such terms required a first mortgage on the property for $5,000 to be obtained, to be assumed by the buyers as a part of the purchase price; and which plaintiff agreed to assist the Warrens to obtain; and that defendants refused to sign the contract, which also provided that if the defendants were not able to procure such a loan, the sales contract would become void and the deposit would then be refunded to the proposed buyers. Plaintiff made several attempts to get the loan. Thus one of the contingencies of plaintiff's right to a commission was that a mortgage loan of $5,000 on the property be made available to the parties, and that the plaintiff would assist in procuring such a mortgage loan. Despite the plaintiff's efforts and negotiations, the loan admittedly was not obtained until December 27, 1950, when it was procured by Merle Greene, another broker.

Plaintiff's agency was for no fixed duration. Under the law it could be revoked by either party in good faith after the lapse of a reasonable time and upon notice. La Force v. Washington University, 106 Mo.App. 517, 523, 81 S.W. 209, 211; Loving Co. v. Hesperian Cattle Co., 176 Mo. 330, 351, 75 S.W. 1095. If the agency existing between the plaintiff and the defendants had been terminated by notice after the lapse of a reasonable time from its inception and prior to the defendants' agreement with a subsequent agent, Merle Greene, the defendants, in the absence of fraud, had the right to make the sale of their property to the Warrens who had, through the efforts of a new agent, procured the loan required by the defendants as a condition of the sale. Dodge v. Childers, 167 Mo.App. 448, 151 S.W. 749. While there was some evidence on the plaintiff's part that he did not receive a notice to refund the deposit of $500 to the Warrens until two days after their contract made through Mr. Greene on December 27, 1950, and although the plaintiff and his agent were unable to fix the date of the revocation of their agency with the defendants, there is positive evidence that the second contract was not made until after plaintiff's agency had been revoked. Furthermore, there is no showing on plaintiff's part that then or at any time prior to December 29, he could have obtained a first mortgage loan required by the terms of sale, but, on the contrary, plaintiff's own evidence is that the refund was made on December 29, on demand of the Warrens because the plaintiff had not been able to procure the loan. Plaintiff had been told by the defendants and the Warrens that they were pressed for time and cash in order to dispose of their properties and to make payments on the properties they wished to purchase. Apparently about three weeks elapsed during plaintiff's agency and he admittedly did not and could not obtain the loan required of his prospect. He so conceded when he returned the deposit to the Warrens. We cannot say that his agency was terminated before the lapse of a reasonable time. Nor is there any evidence of fraud or bad faith on the defendants' part.

If it be considered, under the record here, that plaintiff's right to recover a commission depends on whether he procured a buyer ready, willing and able to make the purchase, the preponderance of the evidence is that the plaintiff failed to do so. Tant v. Gee, 348 Mo. 633, 638, 154 S.W.2d 745. If his right to a commission rests upon the happening of a certain contingency, namely, the availability of a $5,000 first mortgage loan, then the evidence is clear that such contingency did not occur during plaintiff's agency and his recovery would not follow. Jones v. Hill, supra. Under either theory of the case it is our conclusion that the plaintiff failed to establish his right of recovery. The judgment is reversed and the cause is remanded with instructions to enter judgment for the defendants.

All concur.