Anthony H. WEBER, Sr., (Plaintiff)
Respondent,

v.

Mrs. Helen L. LARKIN and Lammers Realty & Construction Company, Inc., a Corporation, (Defendants) Appellants.

No. 31725.

St. Louis Court of Appeals.

Missouri.

July 21, 1964.

Rehearing Denied Aug. 14, 1964.

Milton F. Napier, John F. Mulligan, St. Louis, for defendants-appellants.

Edwward C. Schneider, William G. O'Donnel, St. Louis, for plaintiff-respondent.

DOUGLAS W. GREENE, Special Judge.

This case is an action for a real estate broker's fee claimed to have been earned by plaintiff for procuring a buyer of defendants' property. Verdict and judgment below was for plaintiff in the sum of $1,096.53, from which defendants have appealed.

Defendants were the owners of a residence located at 541 Mueller Court in St. Louis County, Missouri. Plaintiff's evidence was that in July of 1960, Mrs. Larkin called him in connection with some other property, and in the discussion the property in question was mentioned. Plaintiff's son offered to buy the property for $15,750 net to defendants, if defendants would pay the points, which was the premium paid to the lending agency. Defendants refused. Defendants agreed on August 8, 1960, in writing, to sell the property to plaintiff's son, or his assigns, at a net price to sellers of $15,750, sellers to pay no points or commission (Plf's. Ex. 1). Plaintiff and his son were given ten days in which to complete financing. The son was not able to complete the purchase as he was not able to obtain necessary financing. Plaintiff then obtained a conditional commitment for a loan of $15,700 on the property, provided the borrower could qualify for the loan. This commitment was issued on August 30, 1964 (Plf's. Ex. 5). Plaintiff had brochures printed (Plf's. Ex. 4) and ran ads in the papers in an effort to sell the home.

Bernard A. and Pauline Brauchy saw one of the brochures and contacted plaintiff in September of 1960. Thereafter, the Brauchys and plaintiff signed a sale contract on November 17, 1960 (Defts.' Ex. B), in which contract the Brauchys agreed to buy the property for $17,200, paying $50 down and $950 on November 27th, and $500 on closing date, with balance of $15,700 to be provided by an FHA Insured Loan for thirty years. The contract was made contingent upon the loan being procured. The sale was to be closed on December 15, 1960, or prior thereto, and time was of the essence of the contract. Thereafter, on November 23, 1960, plaintiff, defendants and the Brauchys signed a supplemental sale contract (Plf's. Ex. 6), in which the Brauchys paid $1500 down, with the $15,700 balance still to be paid by an FHA Insured thirty year loan as per the FHA conditional commitment previously mentioned. The contract was contingent on the availability of such financing to the Brauchys, and the contract stated that if the commitment was not obtained by noon of November 30, 1960, the contract was null and void, and that the earnest money deposit would be returned to the purchasers.

The sale was to be closed on or before December 15, 1960, and time was declared to be of essence of the contract. The contract provided that defendants were to pay to plaintiff remuneration as agreed, with plaintiff paying the points out of his remuneration. The agreement for remuneration was defendants were to receive $15,750 net with plaintiff to receive as commission the amount of the sale price over such figure.

The Federal Housing Administration did not, before November 30th, or at any time thereafter, for that matter, issue a firm loan commitment of $15,700 to purchasers. They did issue a commitment of $14,500 to the Brauchys. Plaintiff tried to get the commitment raised, but could not do so. Plaintiff received an extension of time for closing the sale from defendant Helen L. Larkin on December 15, 1960, to extend time for closing to January 31, 1961, with all other terms and conditions of the contract to remain the same (Plf's. Ex. 7). The Brauchys refused to sign an extension agreement, and no officer of the Lammers Realty or Construction Company, Inc., designated as such, signed it. The Brauchys demanded their $1,500 back, and after the Brauchys threatened to go to the Circuit Attorney, plaintiff gave them their money back on January 9, 1961. Plaintiff had no further contact with the Brauchys after

this date. On January 15, 1961, plaintiff gave the key to the property back to defendants at defendants' request.

The General Mortgage Company made an FHA Insured Loan in the amount of $14,500 to the Brauchys on February 3, 1961, after having been asked to process the loan by defendants on January 16, 1961. The FHA commitment for $14,500 to the Brauchys was dated January 25, 1961. Two witnesses, Russell LaBoube and Karl Kirber testified that plaintiff requested appraisals for loans on the property in question. There was no evidence that either request was before December 15, 1960. LaBoube testified defendants told him not to bother, that the deal had fallen through, and Kirber's agent went to the property on January 30, 1961, to appraise it, but was refused admission to the property. Neither appraisal was for an FHA Insured thirty year loan. After sale by defendants to the Brauchys on February 3, 1963, plaintiff brought suit for a commission. Defendants, at close of plaintiff's evidence, moved the court to direct a verdict in their favor for the reason that under the law, the pleadings and the evidence, the plaintiff was not entitled to recover against the defendants, or either of them. This motion was overruled by the trial court.

Defendants' evidence was that Mr. Brauchy contacted plaintiff on or about December 15th, and asked about the FHA financing, that plaintiff said the matter was still in the hands of the FHA, so he went to the FHA himself, where he was told that he could not qualify on the basis of the contract; that Brauchy insisted plaintiff return his money as the loan had not gone through, but plaintiff would not return it; that plaintiff tried to get Brauchy to sign an extension agreement to the contract, but that he refused; that he went back to plaintiff and again asked for his money and that, after threatening suit, plaintiff returned his down-payment of $1,972.50 (Defts.' Ex. C and D). The Brauchys then contacted defendant Larkin and told her he had his money back and

that cleared her to go ahead with her house, that he had no more to do with it. Brauchy did not regard himself as a prospective purchaser at that time. On January 13th, after talking to defendant Larkin, the Brauchys agreed to purchase the property for $16,000, with $1,500 down, and the balance of $14,500 by an FHA insured loan. Defendants obtained the key to the property from plaintiff about December 15, 1961. Neither defendants nor Brauchy ever did anything to interfere with the sale through plaintiff prior to December 15, 1961. At the close of all the evidence, defendants again moved for a directed verdict at the close of all the evidence, which motion was overruled.

 In order to recover a commission, a realty broker must show that he produced a buyer who was ready, willing, and able to buy on the terms set by the owner—the word "able" as used here refers to financial ability. Sargent v. Wekenman, Mo. App., 374 S.W.2d 635.

Prior to December 15, 1961, plaintiff was unable to get a firm commitment for the Brauchys in excess of $14,500. A firm commitment of $15,700 was necessary to complete the sale under the contract. Plaintiff wanted more time to try and arrange financing. Until December 15, 1961, the closing date, the Brauchys were not able to fulfill their agreement as one of the conditions of the contract, namely, the FHA Insured Loan of $15,700, could not be obtained. It was never obtained, nor was there any evidence that it could ever have been obtained. Defendants did nothing to keep it from being obtained. When the Brauchys could not obtain the loan, they demanded their down-payment back, and finally received it after considerable delay. The contract was at an end, as its conditions had not been met during the stipulated time, through no fault of defendants or purchasers.

 In order for a real estate agent to recover in his action for a commission allegedly due after vendors conveyed to pur-

chasers procured by agent, the agent must prove, by the greater weight of the credible evidence, full compliance with the terms of his special contract with vendors (Evans v. Jacobson et ux., Mo.App., 269 S.W.2d 156, KCCA; Westerman v. Peer Inv. Co., 197 Mo.App. 278, 195 S.W. 78; Rogers v. McCune, Mo.App., 283 S.W.2d 872; Jones v. Hill, Mo., 18 S.W.2d 382). However, if vendors prevent or hinder the fulfillment of the contract, and it is shown that the conditions of the contract would have been fulfilled except for such interference or hindrance by vendors, then a showing of compliance with the special conditions of the contract is not necessary to permit the agent to recover. Spitcaufsky v. Guignon Real Estate Co., Mo., 321 S.W.2d 481, 1. c. 487.

In the Evans case, supra, the agent was authorized, and did agree to assist purchasers to obtain a first mortgage loan. He was unable to obtain the loan (which is the exact situation here) and agent was notified that his agency was terminated. Purchaser demanded his earnest money deposit back and received it from the agent. Purchaser then bought the property from vendors through another agent who procured the loan in question. The contract in the Evans case provided that if vendors were unable to obtain the loan, the contract was null and void. The contract here (Plf's. Ex. 6) plainly states that if a commitment for FHA insured thirty year loan for $15,700.00 was not obtained by November 30, 1960, that the contract was null and void. No such commitment was ever obtained. Plaintiff sought, on December 15, 1960, to extend the closing date of the contract from December 15, 1960 to January 31, 1961. Defendant Helen Larkin did sign an extension agreement. She testified that she did so on the representation of plaintiff that the Brauchys would sign it also. This testimony was not disputed. The Brauchys did not, and would not, sign the extension agreement, nor had they any obligation to do so. There is not a scintilla of evidence in the case that defendants did anything to hinder plaintiff's efforts to sell the property in question to the Brauchys at any time when the Brauchys were ready, willing and able to go ahead with the sale.

Therefore, the contract in question (Plf's. Ex. 6), which was the only agreement defendants had with plaintiff, became null and void on November 30, 1960, as it was not extended by the purchasers, who would be necessary parties to such an agreement if they were to be bound, and was not even extended by both defendants, as only Helen Larkin had signed it. Viewing the evidence in the light most favorable to the plaintiff, as we must do, Brophy v. Clisaris, 368 S.W.2d 553; Reese v. St. Louis Public Service Co., Mo.App., 368 S.W.2d 540, there was no evidence in the case that during the life of the contract in question, plaintiff ever produced a purchaser who was ready, willing and able to perform according to the conditions of the contract, and no evidence that defendants hindered in any way, efforts of plaintiff to sell to the Brauchys.

The failure of the trial court to sustain defendants' motion for a directed verdict at the close of all the evidence constitutes reversible error.

For these reasons, the judgment should be reversed and the cause remanded with instructions to enter judgment for the defendants. It is so ordered.

RUDDY, P. J., and ANDERSON, J., concur.