DYER–BUSSEY REALTORS, INC., Plaintiff-Respondent,

v.

Robert C. WRIGHT and Wilma E. Wright, Defendants-Appellants.

No. 12595.

Missouri Court of Appeals, Southern District, Division Three.

Feb. 10, 1983.

W.H. Winchester, III, Norton & Winchester, Sikeston, for defendants-appellants.

William Clayton Vandivort, Sikeston, for plaintiff-respondent.

MAUS, Presiding Judge.

In this court tried case, the plaintiff recovered a judgment for $3,493 upon the basis of the defendants' breach of a written exclusive listing contract. The defendants contend the judgment was improper because the contract had been orally modified so that it was not breached by them.

The evidence establishes the following. On March 1, 1980, the parties executed an exclusive listing contract. The contract was prepared by use of a form approved by counsel for the Missouri Association of Realtors. This contract granted to the plaintiff-realtor "the exclusive right to sell," as those terms are customarily used in the real estate industry, the described property for $49,900. The plaintiff thereafter advertised and showed the property to several prospective buyers. On April 17, 1980, the defendant-husband, speaking for himself and his wife, called the office of the plaintiff and spoke to Bussey. The plaintiff is a corporation owned by Dyer, its president, and Bussey, its vice president. It was undisputed that either Dyer or Bussey had authority to enter into and modify listing contracts on behalf of the plaintiff. The details of that telephone discussion need not be noted at this point. For the resolution of the first point involved, it will be assumed it was agreed by the husband and Bussey the listed price would be changed from $49,900 to $52,000. On April 19, 1980, another broker, apparently operating under a multi-list arrangement, showed the property to the Estels. The Estels signed a real estate con-

tract providing for their purchase of the property for $49,900 upon terms within the provisions of the listing contract. When, by telephone, Bussey told the defendant-husband of this proposed contract, he rejected the same because of the price. The next contact or communication between the plaintiff and defendants was the service of the summons in this cause on May 14, 1980.

■ It is well settled that the written listing contract could be modified by a subsequent oral agreement. *George F. Robertson Plastering Company v. Magidson,* 271 S.W.2d 538 (Mo.1954). While there are exceptions involving doctrines, such as rescission, waiver and estoppel, it is the general rule that such an agreement of modification must be supported by consideration. *Macfarland v. Heim,* 127 Mo. 327, 29 S.W. 1030 (1895). Aside from such exceptions the applicable principles have been stated.

It has been repeatedly held by each one of the Courts of Appeals in this state that an agreement made in substitution of an executory contract of prior date annuls the former contract and is itself a sufficient consideration for a release of its obligations. While the rule is thus stated broadly, the substituted arrangement must contain a change of the obligation of each party in order to constitute a consideration. If the obligation of one party only is affected by the new arrangement, and the other party receives nothing additional and is relieved of no duty, then there is a want of consideration. *Mt. Vernon Car Mfg. Co. v. Hirsch Rolling Mill Co.,* 285 Mo. 669, 693–94, 227 S.W. 67, 74 (1920). The rule has also received the following expression: "[I]t is well settled that while an agreement made in substitution of a prior executory contract annuls the former contract and is itself a sufficient consideration for a release from its obligations, the substituted agreement must contain a change of the obligations of each party in order to constitute a consideration." *Willhite v. Marlow Adjustment, Inc.,* 623 S.W.2d 254, 264 (Mo.App.1981). Also see

*Vrooman v. Burdett,* 336 Mo. 1181, 83 S.W.2d 95 (1935); *S.G. Adams Printing v. Central Hardware Co.,* 572 S.W.2d 625 (Mo. App.1978). Cases such as *Rexite Casting Co. v. Midwest Mower Corp.,* 267 S.W.2d 327 (Mo.App.1954), cited by the plaintiff, do not hold to the contrary. They deal with situations in which the obligation of only one party is altered.

■ If it was not at its inception, when acted upon by the broker, the exclusive listing contract became a bilateral contract. *Chamberlain v. Grisham,* 360 Mo. 655, 230 S.W.2d 721 (1950). Without defining that obligation in detail, the broker was under some duty to attempt to sell the listed property within the terms set forth in that contract. *Chamberlain v. Grisham,* supra. By the assumed modification, the obligation of the broker was changed. The broker clearly had an enhanced opportunity to earn a greater commission. That the obligation of and benefit to the property owners were altered is self-evident. The applicability of the general principles to such a modification has been appropriately summarized:

In this regard the prospect of making a larger commission under the modified agreement or the certainty of making a smaller commission, as in the case where the employer agrees to accept a purchaser who can and will buy on terms other than those contemplated in the original employment contract, furnishes a sufficient consideration to support the broker's agreement to a modification of the terms of his contract with respect to the commission which he is to receive. 12 Am.Jur.2d Brokers § 36 (1964).

The general principles were recently applied to a different modification of a listing contract. *Perkinson v. Burford,* 623 S.W.2d 30 (Mo.App.1981). They were recognized, but held not applicable, when a broker had completely performed. *Guild Management Co. v. Oxenhandler,* 541 S.W.2d 687 (Mo. App.1976). The principles have been consistently applied in respect to similar modifications in other jurisdictions. *Coldwell,*

Banker & Co. v. Pepper Tree Office Center, 106 Cal.App.3d 272, 165 Cal.Rptr. 51 (1980); *Schweickhardt v. Chessen,* 329 Ill. 637, 161 N.E. 118 (1928); *The Nebraskans, Inc. v. Homan,* 206 Neb. 749, 294 N.W.2d 879 (1980). Annot., Brokers—Modification—Consideration, 42 A.L.R. 987 (1926).

Because of the principles noted above, it is necessary that a determination be made concerning whether or not the parties agreed the selling price should be modified to $52,000. The trial court expressly declined to make a determination on this issue. If the key to that determination was the credibility of the witnesses, it would be appropriate to remand the case for such a determination by the trial court. However, unless justice requires otherwise, it is the duty of this court to finally dispose of the case. Rule 84.14. A remand is not required.

■ The defendant-husband testified that Bussey acceded to his request that the price be raised to $52,000. Bussey did not deny such accession, but testified she said she would pass the information along to Dyer. Dyer did not deny such an oral agreement. The broker who produced the $49,900 offer also testified. He stated that before he showed the property on the occasion that resulted in that offer, Bussey told him the price had been raised. Neither Bussey nor Dyer contradicted this testimony. The substantial evidence does establish an oral agreement that the price would be raised to $52,000. As the Estel offer did not meet the terms of the modified contract, the plaintiff was not entitled to recover upon that contract. *Boyd v. Margolin,* 421 S.W.2d 761 (Mo.1967); *Alcorn v. Moore,* 386 S.W.2d 907 (Mo.App.1965); *Evans v. Jacobson,* 269 S.W.2d 156 (Mo.App. 1954).

■ By Count II of its petition, the plaintiff sought to recover upon the theory of quantum meruit. This count must be considered. It was premised upon allegations the defendants sold the property to the Pounds to whom the plaintiff had shown the property during the term of the listing contract. The evidence established the

plaintiff did show the property to the Pounds sometime in March or early April. On June 18, 1980, through another broker, the defendants sold the property to the Pounds for $48,000. For the disposition of this count, it is not necessary to consider all of the intricacies of whether or not a broker employed under an express contract may seek to recover upon that contract and/or quantum meruit. *Gundaker v. Templer,* 560 S.W.2d 306 (Mo.App.1977); Annot., Broker—Sale by Owner at Lower Price, 46 A.L.R.2d 848 (1956). It is clear although " 'the broker may be the means of first bringing the parties together and of opening negotiations with them, yet if the negotiations are unproductive and the parties in good faith withdraw therefrom and abandon the proposed purchase and sale, a subsequent renewal of negotiations followed by a sale at a lower price does not entitle the broker to commissions, as he cannot be said to be the procuring cause of the sale.' " *Cornet & Zeibig, Inc. v. 430 Withers Realty Co.,* 415 S.W.2d 751, 756 (Mo. banc 1967). To establish a right to recover in quantum meruit it was necessary for the plaintiff to prove it was the procuring cause of the sale to the Pounds. *Cornet & Zeibig, Inc. v. 430 Withers Realty Co.,* supra. Or stated another way, it was necessary for the plaintiff "to show an unbroken chain of causation necessary to satisfy the requirement of procuring cause, to wit, that plaintiff's acts in their natural sequence, unbroken by any new and independent cause, resulted in the sale." *Zabol v. Lasky,* 555 S.W.2d 299, 307 (Mo. banc 1977). In view of the fact the summons in this cause was served on the defendants on May 14, 1980, it seems unlikely the plaintiff was the procuring cause of a sale on June 18, 1980. In all events, the plaintiff did not meet its burden of showing an unbroken chain of causation. *Zabol v. Lasky,* supra; *Cornet & Zeibig, Inc. v. 430 Withers Realty Co.,* supra. The judgment for the plaintiff is reversed and judgment is entered for the defendants. The costs are taxed against the plaintiff.

GREENE, C.J., and FLANIGAN and PREWITT, JJ., concur.