STAEHLIN, Appellants, v. KRAMER, Respondent.

St. Louis Court of Appeals, April 24, 1906.

AGENCY: Real Estate Broker: Duration of Agency: Reasonable Time. A real estate broker in charge of property for sale, in the absence of a definite contract, has a reasonable time in which to find a purchaser; after the lapse of a reasonable time, the owner may sell personally or through other agents without incurring liability to the first agent for commissions.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel G. Taylor,* Judge.

AFFIRMED.

*Peers & Peers* for appellant.

When a real estate agent is the procuring cause of a sale of land, he is entitled to his commission. McCormack v. Henderson, 100 Mo. App. 647, 75 S. W. 171. Where the agent set on foot inquiries and negotiations which finally culminated in the sale of the real estate, and he brought the buyer and seller together, he is entitled to his commission. Cunliff v. Hausmann, 97 Mo. App. 467, 71 S. W. 368. Where an agent discloses the name of a purchaser to the seller, and through such disclosure negotiations are opened and a sale effected, the agent is entitled to his commission, though the sale was made by the owner. Merton v. Case, T. M. Co., 99 Mo. App. 630, 74 S. W. 434.

*Montague Punch* for respondent.

Where there is no specific time named as limiting a real estate brooker's agency, the owner may, after a reasonable time, and in good faith, revoke the agency, and sell to the party with whom the broker has been ne-

gotiating. La Force v. Washington University, 106 Mo. App. 523, 524, 81 S. W. 209; Sibbald v. Iron Company, 83 N. Y. 378; Fairchild v. Cunningham, 84 Minn. 521.

GOODE, J. — This action was instituted to recover a commission alleged to be due appellant from respondent for the sale of a parcel of real estate. The defense is that appellant did not effect the sale. Respondent was a widow living on Dickson street in St. Louis, but, as we understand, conducting a barber shop at No. 2025 Market street, which was the property sold. It was bought in October, 1904, by Maurice Lipschitz. Staehlin, who was a real estate agent, asserts that he found the purchaser, directed his attention to the property and made him acquainted with respondent. Staehlin swore substantially as follows: A year or more before the sale respondent asked him if he could sell her property, saying her price was $7,500. Knowing Lipschitz was wanting to buy some property on Market street, appellant called his attention to respondent's premises and in July, 1904, took him to her home and introduced him. Mrs. Kramer raised her price to $9,500, which Lipschitz refused to pay. After a negotation extending over several weeks, Mrs. Kramer finally agreed to sell for $8,250, which Lipschitz paid and the property was conveyed to him. Appellant's testimony was corroborated by that of his daughter. Mrs. Kramer testified that about four years prior to the sale, while she was in front of her home one day, Staehlin passed and asked her if she would sell her Market street property. She said she would if she could get her price, which was $7,500; Staehlin told her he could sell it for her in two weeks and would ask three per cent commission, and she told him it would be all right. She heard nothing from Staehlin until about two years before the sale occurred, when he came again to her home on Dickson street, introduced his daughter and asked if respond-

ent had yet sold her property. She told him she had
not and did not want to sell because her oldest son had
married, was doing well and she wanted to live on the
property with her daughter. Staehlin saw her once after
that and said he could not get a buyer and she said all
right, she was not anxious to sell. She swore that she
never saw Staehlin again until after the property was
sold. She admitted that Staehlin brought Lipschitz to
her house several years before the sale, but nothing re-
sulted from that visit, and she never saw Lipschitz
again until Mr. Hoig, the agent who actually sold the
property, brought him to her on August 30, 1904. Re-
spondent paid Hoig a commission for the sale. Hoig
testified to taking Lipschitz to see Mrs. Kramer and
making the sale. It will be seen that the testimony re-
garding who procured the purchaser and sold to him
was contradictory; that for appellant going to show he
was the procuring cause; whereas, that for respondent
was that appellant had nothing to do with the matter.
The court gave instructions reflecting the two phases
of the case. At the instance of appellant the jury were
told that if respondent, more than a year before the
sale authorized appellant to find a purchaser and was
aware that apellant was making continued efforts to
procure one and did not revoke his authority, and pur-
suant to such authority appellant made Lipschitz ac-
quainted with the property and the terms on which it
might be obtained, introduced Lipschitz to respondent
and in consequence of appellant's effort Lipschitz was
induced to buy while appellant was still acting as re-
spondent's agent, appellant was entitled to recover, even
though it was sold at a less price than appellant was
authorized to sell, and though respondent herself, or
through another agent, made the sale. In another in-
struction the jury were told that if respondent employed
appellant to sell and agreed to pay him a commission
for his services, and appellant while still acting as

agent, procured a purchaser for $8,250 and the proper-
ty was sold to said purchaser for that sum, the verdict
should be for appellant. The court instructed further
that if respondent authorized appellant to find a pur-
chaser and the latter took a purchaser to see the prop-
erty and introduced him to respondent, the fact that the
sale was made by respondent herself or through another
agent would not bar appellant's right to his com-
mission. For respondent the court instructed that
the burden was on appellant to establish by a pre-
ponderance of the evidence, that he was employed
to sell the property and pursuant to said employment
performed the services which are the basis of the suit;
that if the jury found respondent employed appellant
to sell her premises and, at the time of the employment,
no period was agreed on during which the agency should
continue, appellant's agency would continue and be in
force for a reasonable time after such employment, con-
sidering all the circumstances in evidence; and if the
jury found a reasonable time thereafter elapsed with-
out a sale of the property by appellant, and respond-
ent, after the lapse of such time, in good faith and with-
out the purpose of avoiding the payment of a commis-
sion to appellant, sold the property to a purchaser with
whom appellant had been negotiating, the verdict should
be for respondent. Another instruction was of similar
tenor and informed the jury that if no time was agreed
on in which appellant might act as respondent's agent
for the sale of the property, it was incumbent on appel-
lant to find a purchaser ready, willing and able to buy
at the price authorized, within a reasonable time. An-
other instruction was that if respondent employed ap-
pellant to sell the premises three or four years before
the sale actually occured, and during a month or two
subsequent to the employment appellant found no pur-
chaser, and at the end of said period it was agreed be-
tween the parties that appellant's authority to act as

respondent's agent should cease, and thereafter respondent never employed appellant again to act as her agent, and the property was sold in October, 1904, to Lipschitz and appellant had had no negotiations with Lipschitz for the sale of the property for two years or more prior to the sale, the verdict should be for the respondent, even though appellant had introduced Lipschitz to respondent and called his attention to the property.

We think those instructions fairly presented to the jury the essential issues of fact in the case. Those given at the instance of appellant submitted the facts in accordance with his testimony, which in effect was that he drew Lipschitz's attention to the property, opened negotiations with him for the sale of it and continued to negotiate until the sale was accomplished. The radical divergence between the evidence for appellant and that for respondent was in relation to when appellant began negotiations with Lipschitz and whether or not they continued practically until there was a sale. According to Staehlin, he took Lipschitz to respondent's home in July, 1904, began then to negotiate with him for the sale and gradually induced Mrs. Kramer to reduce her price until she was willing to take what Lipschitz would pay. Respondent's testimony on the contrary, was that Staehlin brought Lipschitz to her two years before the sale occurred, which visit proved futile and she saw nothing more of Lipschitz until the last of August, 1904, when Mr. Hoig brought him to see her and the result of this interview was that Hoig sold the property to Lipschitz. Staehlin did not assert that he was given an agency for a definite time and, of course, he was empowered to act only for a reasonable time and was bound to find a purchaser within it or leave respondent free to sell her property personally or through some other agent. [LaForce v. University, 106 Mo. App. 517.] If his version of the affair was true, he found a buyer within a reasonable time and was entitled to a verdict.

The instructions recognized his right to a commission if that was the fact. But if respondent's version was true, appellant certainly had no claim on her for a commission from the bare fact that two years before the sale was made he took Lipschitz to see her property. If appellant could recover under those circumstances, an owner of premises who once puts them into the hands of an agent for sale, could never afterwards sell to any person whose attention was drawn to the property by said agent, without paying the agent a commission. The court's instructions were comprehensive and fair. It may be true that the verdict of the jury was for the wrong party and the outcome of prejudice, as appellant asserts; but the evidence falls far short of showing this was true with the degree of certainty which would justify us in setting aside the verdict. The testimony to support the defense was substantial and the judgment will be affirmed. All concur.