HOLBROOK-BLACKWELDER REAL ESTATE & TRUST COMPANY, Respondent, v. HARTMAN et al., Appellants.

St. Louis Court of Appeals, January 7, 1908.

1. **REAL ESTATE BROKER: Written Authority: Commission.** Under the act of 1903 (Laws 1903, page 161) in cities of three hundred thousand inhabitants and over, a real estate broker cannot recover a commission for making a sale of real estate unless he can show written authority of the owner to make such sale.

2. ———: ———: ———. But where a real estate dealer had verbal authority to sell, from the owner, and the owner, at the request of the dealer, signed and delivered an option contract for the sale of the property to the purchaser procured by the dealer, and then wrote a letter to the dealer agreeing to pay a stipulated sum as a commission for selling the property at the price mentioned in the option, these writings constituted written authority to the dealer to sell and entitled him to his commission.

3. ———: ———: ———: **Expiration of Option.** And in such case where the option contract procured by the agent expired before the trade was concluded and the sale was afterwards concluded by the owner with the purchaser on the terms mentioned in the option, but the evidence tended to show the owner still depended upon the efforts of the dealer to conclude the trade, this was sufficient to justify a finding, in an action for commission by the dealer, that the agency was continued after the expiration of the option.

Appeal from St. Louis City Circuit Court.—*Hon Jesse A. McDonald,* Judge.

AFFIRMED.

*T. J. Rowe, Thos. J. Rowe, Jr.,* and *Henry Rowe* for appellants.

*E. W. Banister* for respondent.

STATEMENT.—Plaintiff is a Missouri corporation and maintains an office in the city of St. Louis. Defendants are residents of said city. In 1905, defendant Minnie Hartman owned a tract of vacant ground in

block 2355, city of St. Louis, which had a frontage of six hundred and three feet and a few inches on the south line of North Market street, by a depth of two hundred and forty-seven feet to Magazine street, bounded on the east by Leffingwell and on the west by Glasgow avenues. Mrs. Hartman wanted to sell the piece of ground and in November or December, 1905, her husband verbally authorized plaintiff to offer it for sale and plaintiff put "For Sale" signs upon the property, and a few days afterwards defendant C. A. Hartman and Messrs Holbrook and Blackwelder, of the Holbrook-Blackwelder Real Estate & Trust Company, went upon the property and looked it over with the view of placing a value upon it. Learning that the city of St. Louis wanted a piece of ground in that neighborhood, plaintiff interviewed Mr. James Player, City Comptroller, and on April 25, 1906, procured from defendants the following option on the property:

"Mr. James Y. Player, City Comptroller,

City Hall, City.

Dear Sir: For and in consideration of one dollar to me in hand paid, receipt of which is hereby acknowledged, I hereby agree to sell to the city of St. Louis, for park purposes, city block number 2355, having a front of 603 feet 2¼ inches, more or less, on the south line of North Market street, by a depth southwardly of 247 feet, more or less, to Magazine street, being bounded east by Leffingwell avenue, and west by Glasgow avenue for the sum of forty thousand dollars ($40,000) to be paid in cash on delivery of a good and sufficient warranty deed, free and clear of all liens and incumbrances except taxes for the year 1906, and thereafter, special or general. Provided that said sum of forty thousand dollars ($40,000) is paid to me prior to July first, 1906.

"Very truly yours,

"CHARLES A. HARTMAN,

"MINNIE HARTMAN.

"We hereby extend the above option to and including August 31, 1906.

"CHARLES A. HARTMAN.
"MINNIE HARTMAN."

On the next day plaintiff received the following letter from Mrs. Hartman.

"St. Louis, Mo., April 26, 1906.
"Holbrook-Blackwelder Real Estate Trust Co.,
St. Louis, Mo.
"Gentlemen: If the city purchases the property on North Market and Glasgow avenue for $40,000, we will pay you a commission of $1,000, for making this sale.
"Yours truly,
"MINNIE HARTMAN."

On June 28, 1906, ordinance No. 22418 was passed and approved by the mayor. This ordinance authorized the mayor and comptroller to purchase a piece of ground in the vicinity of the Hartman tract for a city park. The mayor and comptroller advertised for sealed proposals under the ordinance, to be opened on September 17, 1906. On September seventh plaintiff received the following communication from Mr. Player:

"Holbrook-Blackwelder Real Estate Trust Company,
Eighth and Olive streets, St. Louis, Mo.
"Gentlemen: Through you, I was given an option by Mr. Charles A. Hartman and wife for the purchase of property .in city block 2355, having a frontage of 603 feet 2¼ inches, more or less, on the south line of North Market street, by a depth of 247 feet. The option gives us the privilege to purchase the property for forty thousand dollars ($40,000). Since the option was given an ordinance was passed by the Municipal Assembly authorizing the purchase of a lot or lots of ground within the district in which the lot above named is comprised, and appropriated $40,000 therefor. Enclosed herewith you will find a copy of the advertisement, and I would ad-

vise, in order to avoid complication, that you forward to me in a sealed envelope, as required by the advertisement, a formal proposition for the sale of the property to the city at whatever amount you care to stipulate.

"Very truly yours,

"JAMES Y. PLAYER, Comptroller."

On the same day plaintiff handed defendants a form of bid or proposal to sell and advise them to sign it and file it with the Comptroller. On September thirteenth defendants wrote plaintiff as follows:

"Holbrook-Blackwelder Real Estate Trust Co.,

812 Olive Street, City.

"Dear Sirs: Answering yours of the seventh inst., will say we've decided to submit a sealed proposal to the city of St. Louis, therefore will not require your services in the matter.

"Yours very truly,

"CHAS. A. HARTMAN.

"MINNIE HARTMAN."

On the seventeenth of September, 1906, defendants filed the following proposal (a copy of the form furnished them by plaintiff):

"City of St. Louis, State of Missouri.

"We hereby agree to sell to the City of St. Louis, for park purposes, city block number 2355, having a front of 603 feet 2¼ inches, more or less, on the south line of North Market street, by a depth southwardly of 247 feet 10 inches, more or less, to Magazine street, being bounded east by Leffingwell avenue and west by Glasgow avenue, for the sum of forty thousand dollars, to be paid in cash on delivery of a good and sufficient warranty deed, free and clear from all liens and incumbrances except taxes for the year 1906 and thereafter, special and general.

"Very truly yours,

"CHARLES A. HARTMAN.

"MINNIE HARTMAN."

Plaintiff offered evidence tending to show that on August thirty-first, the day the extension period of the option expired, defendant C. A. Hartman, called several times at plaintiff's office to see about the sale of the property to the city, and that Mrs. Hartman, about September eighth or ninth, stated to one of plaintiff's agents that there was no doubt plaintiff had earned a commission and they (defendants) were willing to pay for the work plaintiff had done in trying to sell the property, but did not think plaintiff was entitled to.$1,000.  C. A. Hartman testified that plaintiff never told him or his wife that the city ordinance had been passed, and that he told plaintiff after the expiration of the option that they (defendants) would withdraw the property from the market, and on September seventh, after learning the ordinance had been passed, he told plaintiff he would make the sale of the property himself as the ordinance had been passed, and denied he used the form of proposal furnished him by plaintiff.

Defendants were out of the city during the summer of 1906, and did not return until early in September. The question of purchasing property for park purposes in the vicinity was brought up in the House of Delegates by Hon. O'Brien, representing the ward where the property is situated.  He suggested to Mr. Player another tract but was told by him that it was not suitable for a park for the reason it was filled ground, and suggested getting an option on another tract.  Player testified that plaintiff first called his attention to the Hartman tract.

The issues were submitted to the court without the intervention of a jury.  No declarations of law were asked or given.  The court found the issues for plaintiff and rendered judgment in its favor for $1,000, from which defendants appealed.

BLAND, P. J. (after stating the facts).—Defendants rely upon two points for a reversal of the judgment: first, that they had no agreement in writing with plaintiff, appointing it their agent to sell the ground, and invoke the Law of 1903, requiring such contracts to be in writing (Laws of 1903, p. 161). In the case of Rothwell v. Gibson, 121 App. 279, 98 S. W. 801, we had occasion to discuss the Act of 1903, and on the authority of Downing v. Ringer, 7 Mo. 585, and the Missouri cases which have followed it, held that the Act of 1903 made void all verbal contracts with real estate brokers for the sale of real property in cities of three hundred thousand inhabitants and over; and when a broker sought to recover a commission for making a sale of real estate in such cities it was essential to his right to recover that he produce the written authority of the owner to make such sale. But we think the evidence in this case is sufficient to show plaintiff had authority in writing from Minnie Hartman, the owner, to make the sale. On April twenty-fourth, Mrs. Hartman, and her husband, at plaintiff's request, signed and delivered to plaintiff an option prepared by it, in which they offered to sell the property (describing it) to the city for $40,000, and on the following day Mrs. Hartman offered, in writing, to pay plaintiff $1,000, if the city of St. Louis should buy the property for $40,000. These two writings should be construed together and when taken together they clearly authorize plaintiff to sell the property to the city for $40,000. The second point is that the option (authorizing plaintiff to sell the property) expired before the sale was actually made, and that the sale was afterwards made by defendants in person. The option, as extended, expired August thirty-first. The sale was not made until in September following, but plaintiff's evidence tends to show it furnished defendants with a form of proposal to the city authorities for the sale of the property; that defendants retained this form, copied it and

submitted the copy, and that Charles A. Hartman called at plaintiff's office and talked about the sale of the property with plaintiff's agent after the expiration of the option, and that Mrs. Hartman acknowledged plaintiff had worked up the sale. This evidence, we think, tends to show defendants did not revoke the authority of plaintiff to make the sale but continued plaintiff as their agent after the expiration of the option. It is true, he notified plaintiff that its agency was at an end and defendants would make the sale themselves. It was for the court, sitting as a jury, to weigh this conflicting evidence and determine the issue of fact raised thereby. It found in favor of plaintiff and that finding is binding on us.

The judgment is affirmed. All concur.