Gerald L. FOX, Individually, James M. Canavan, Francis A. Dunnagan, Normal H. Halls, Edward E. Haverstick and Alfred Lee Shapleigh, II, Copartners, Doing Business Under the Name of Smith-Moore and Company, Respondents and Conditional Appellants,

v.

John G. BURTON, Appellant,

and

David A. Blanton, Jr., Conditional Respondent.

No. 51506.

Supreme Court of Missouri, Division No. 1.

April 11, 1966.

Motion for Rehearing or for Transfer to Court En Banc Denied May 9, 1966.

**330**

Raymond F. McNally, Jr., St. Louis, for appellant.

Lon Hocker, Stephen M. Boyd, St. Louis, for respondents; Hocker, Goodwin & Mac-Greevy, Bryan, Cave, McPheeters & McRoberts, St. Louis, of counsel.

Flynn, Parker & Badaracco, Norman C. Parker, St. Louis, for respondent Blanton.

HIGGINS, Commissioner.

In this action for broker's commission plaintiffs had verdict and judgment for $51,632 against defendant John G. Burton, and he seeks to be relieved from that judgment on this appeal. There is also a "conditional" appeal by plaintiff Gerald L. Fox from a judgment in favor of defendant David A. Blanton, Jr., on Fox's alternative count against Blanton for $73,200 for reasonable value of services.

Count I of the petition alleges: Plaintiffs are engaged in the brokerage business in St. Louis, Missouri, and plaintiff Gerald L. Fox is associated with the firm of Smith-Moore & Company in which the other plaintiffs are partners, Fox's fees being divided 60 per cent to Fox and 40 per cent to Smith-Moore & Company. In 1958 Fox was employed by defendant David A. Blanton, Jr., to obtain a buyer for The Blanton Company for a commission which, in March 1961, was agreed would not exceed five per cent of the sale price. From the time of his employment until May 11, 1962, Fox attempted to procure a buyer for Blanton and, among other prospects, contacted Drew Chemical Company in the spring and summer of 1961 but was unable to interest Drew sufficiently at that time to consummate a sale. On May 11, 1962, Blanton wrote to Fox:

"Dear Mr. Fox:

"This is to confirm our recent conversation with respect to the sale of the assets of The Blanton Company.

"Over the past year you have been endeavoring to interest some responsible buyer. Since none has developed we have agreed that you will exert no further efforts.

"Our arrangement has therefore been terminated with no obligation upon either of us to the other.

"Just for our records, please sign and return the enclosed copy of this letter.

"Sincerely,
/s/David A. Blanton, Jr., President."

The petition continues: On June 28, 1962, Fox's contact at Drew telephoned Fox about acquisition of Blanton which Fox reported to Blanton and asserted his claim to a fee on any sale of Blanton to Drew since he had interested Drew in Blanton prior to the termination of his agency as Blanton's broker. Blanton replied that he had employed defendant Burton as broker and requested that Fox approach Burton with respect to the fee in the event of a sale of Blanton to Drew. "Accordingly (paragraph 9), on or about June 28, 1962, Fox spoke to Burton on the telephone and they agreed that in consideration of Fox's waiving his claim against Blanton for the full commission, in the event of a sale to Drew Chemical Company, they would in that event share equally the commission to be earned under Burton's contract with Blanton."

Count I concludes with the allegation of a sale of Blanton to Drew in late October or early November, 1962, for $2,500,000, and that Burton earned a commission of $105,000, of which plaintiffs are entitled to one half, or $52,500.

In Count II Fox alone sues defendant Blanton alleging "In the alternative, and in the event it shall be held that the contract alleged in Count I * * * was not entered into, or was invalid," that Fox was the procuring cause of the sale and that the reasonable value of his services is $125,000, in which his interest is $3,000 for expenses plus 60 per cent of the remainder. (The Smith-Moore & Company partners did not join in this count due to personal friendships with Blanton.)

Burton denied the agreement alleged in paragraph 9 of the petition. He admitted a commission of $103,264 and answered further that by writing "Approved" on the letter of May 11, 1962, from Blanton to Fox, Fox abandoned his employment with Blanton and any claims for commission for services he may have performed, and that the alleged agreement was without any consideration.

The evidence shows that Gerald L. Fox had been in the brokerage business since 1939. He had known David A. Blanton, Sr., David A. Blanton, Jr., and The Blanton Company since 1948. Sometime after the death of David Blanton, Sr., in 1957, defendant Blanton asked Fox to attempt discreetly to find a buyer for the company. He made a number of efforts with several prospective purchasers, some of whom sent representatives to visit the plant. He did some traveling and incurred expenses of $3,000. Fox's commission was not to exceed five per cent, an arrangement which was confirmed in writing March 16, 1961. Fox first thought of Drew Chemical Company as a prospect when he read an article reporting that Lehman Brothers, a New York investment house, had purchased the Drew Company which engaged in vegetable oil refining, as did Blanton. "I immediately contacted Dave (defendant Blanton) and we discussed * * * whether * * * they might be a very fine prospect * * *. And we decided that I should go to New York and contact them, which I did." During the week of April 24, 1961, he met with representatives of Lehman Brothers, including Mr. Donald Loomis, head of the legal department, and Mr. Alan Sternlieb of the industrial department. Fox quoted a price of $4,800,000, gave them certain information on the company, and arranged to send additional information. Negotiations went along, "off and on for, I would say, several months. And then there was a period in which Lehman Brothers indicated to me there was no way they could fit it in with the Drew Company * * *." He continued his attempt to find a buyer until the spring of 1962 when his agency was terminated by a meeting between Fox and

Blanton in which Blanton proposed that, in order to make other arrangements, "we would mutually agree to give up the association as far as obtaining any additional inquiries." This meeting led to the letter of May 11, 1962.

John G. Burton had been engaged for 16 years as a "business finder" under the name of John G. Burton & Associates in St. Louis. In April 1962, Blanton called on him upon the recommendation of an officer of Blanton's creditor, the First National Bank. On May 11, 1962, Blanton and Burton entered into a contract whereby Burton was given exclusive agency to sell The Blanton Company. Blanton advised Burton of the termination of Fox's agency and later sent him a copy of the May 11th letter showing the approval of Fox. Burton and Blanton made a list of prospects which did not include the Lehman Brothers-Drew Company contact.

On June 28, 1962, Fox received a call from his April, 1961, contact, Mr. Sternlieb of Lehman Brothers. "(He) wanted to know, since he was going to be in St. Louis right after the 4th of July or thereabouts, he wanted to know if he could come and inspect the Blanton Company plant. And I said I hadn't talked to Dave just recently, and that he had taken it out of my hands, and that I would have to check with Dave. * * * So, I called Dave and told him of this call from Mr. Sternlieb, and Dave was quite interested, of course. And I said, 'He wants to come out.' And so, Dave said, 'Before you do anything, you must call Mr. Burton, who I have made an exclusive contract with.' * * *

"I called Mr. Burton and told him what Dave told me, and that I had this call from New York and Mr. Sternlieb, and Mr. Burton said he had the company up with a considerable number of companies, and until he had cleared with them, he wasn't interested in discussing anything with me. And I said I felt anything we had initiated, and there was a chance to sell the company, I certainly felt we should participate on a

fifty-fifty per cent— * * * And he, then, agreed he saw no objection in having Mr. Sternlieb come and look at the plant, saw no reason to object to it. And, if anything did come of anything that was initiated by Smith-Moore & Co. and me, then he would agree to go fifty-fifty. * * * He continued to even explain to me the type of contract that he had with Mr. Blanton. * * *

"I then immediately called Mr. Blanton and told him Mr. Burton and I had an agreement, and that I then wanted his permission to go ahead and allow Mr. Sternlieb to come. * * * I told him of the conversation I had with Mr. Burton, and that we had an agreement on how we would share commission on anything that might develop from the Lehman and Drew contact. And he then gave me permission to have Mr. Sternlieb come. And I called Mr. Sternlieb in New York, and immediately told him to call Dave direct and make his own arrangements for the time he wanted to come."

Burton denied making any agreement to split a fee with Fox. He said he told Fox in their only conversation that he would not split because he had just received his exclusive situation.

Fox had no other contacts until October 29, 1962. "I called Dave, told him I was going to New York, and would he like for me to contact Alan Sternlieb to see if anything could be done to revive the Drew matter. And he said, 'No, don't do anything, we have got something going, and it might muddy the water.'"

Between June 28, 1962, and October 29, 1962, Sternlieb called Blanton and arranged to visit the plant. Negotiations for the sale of all Blanton stock followed in New York and St. Louis which were attended by Blanton and Burton, Loomis and Sternlieb, and others, and, on November 1, 1962, the sale of Blanton to Drew was consummated. On November 2, 1962, Fox read of the sale and Mr. Edward E. Haverstick of Smith-

Moore & Company wrote Burton requesting half of the commission.

Burton has duly appealed from the judgment against him on Count I, but Fox's appeal from the judgment in favor of Blanton on alternative Count II is taken only "against the possibility that Burton's position might be sustained," Fox's motion for new trial and notice of appeal being "conditioned upon a reversal of the judgment against Burton." Thus, to use the language of Fox's counsel, there is no occasion to consider the conditional appeal if the case is otherwise affirmed.

Appellant Burton says that the court erred in submitting this case because the evidence shows no consideration for the agreement alleged to have been made by him. He says specifically: IA(1) Fox's waiver of May, 1962, and (2) Fox's act in discharging Blanton from obligation, were not valid considerations for Burton's alleged agreement on June 28, 1962; (3) whatever claim Fox had against Blanton for commission ceased to exist when the employment was terminated in May, 1962; (4) there is no evidence that Fox made any agreement or promise to waive his alleged claim against Blanton that was concurrent with Burton's alleged agreement of June 28, 1962. He says also: (IB) that the alleged agreement of June 28, 1962, was indefinite and uncertain and, therefore, unenforceable; and (II) that it was error to give Instruction No. 4 because the evidence does not support the hypothetical consideration that Fox agreed not to assert a claim against Blanton.

Plaintiffs' case against Burton was submitted by Instruction No. 4 and Burton's defense was submitted by Instructions 5 and 6:

### "INSTRUCTION NO. 4:

"Your verdict must be for plaintiffs and against defendant Burton on Count I if you believe that in consideration of Fox's agreement not to assert a claim against Blanton for a commission on any sale to Drew Chemical Company, Burton agreed that in the event of a sale of such stock to Drew Chemical Company Burton would share his contract commission with plaintiffs on a 50%–50% basis."

### "INSTRUCTION NO. 5:

"Your verdict must be for the defendant Burton if you do not believe that:

"First, Burton agreed that in the event of a sale of stock of The Blanton Company to Drew Chemical Company, he would share his contract commission with Fox on a 50%–50% basis; and

"Second, such agreement was in consideration of Fox's agreement not to assert a claim against Blanton for a commission on any sale to Drew Chemical Company."

### "INSTRUCTION NO. 6:

"As used in these instructions, 'consideration' means (a) an act other than a promise, or (b) a forbearance, or (c) the creation, modification or destruction of a legal relation, or (d) a return promise, bargained for and given in exchange for the promise."

Appellant does not contend that Instruction No. 4 is an erroneous statement of law, but limits his complaint to a charge that there was no evidence to support it. Its hypothesis is first stated in paragraph 9 of plaintiffs' petition: " * * * on or about June 28, 1962, Fox spoke to Burton on the telephone and they agreed that in consideration of Fox's waiving his claim against Blanton for the full commission, in the event of a sale to Drew Chemical Company, they would in that event share equally the commission to be earned under Burton's contract with Blanton." And Instructions 5 and 6 are limited to the hypothesis submitted in No. 4. Consequently, discussion of arguments and cases dealing with consideration or lack of consideration arising from past consideration or absence of new or concurrent considerations in respect to matters occurring in May, 1962, is not relevant to the issue of whether Fox and Burton exchanged considerations and made an

agreement on June 28, 1962, and arguments in appellant's points (1), (2), and (4) which view the matters of May, 1962, as the only evidence of waiver may be passed without further comment.

The only question on this appeal, then, is whether there is evidence to support the required findings of Instruction No. 4 which are whether Fox had a claim against Blanton to forbear or waive, and whether Burton and Fox made an enforceable agreement to share a commission.

In answering these questions, we are not concerned with the sufficiency of evidence to support a verdict against defendant Blanton, but are concerned only with whether Fox had a claim against Blanton sufficient enough for its waiver or forbearance to serve as consideration for the agreement alleged to have been made between Fox and Burton.

■ The rule underlying plaintiffs' theory against Burton is stated in 17 Am. Jur.2d, Contracts, § 111: "It is the general rule that in the absence of fraud or other invalidating circumstances, the surrender of a disputed or doubtful right or claim is a sufficient consideration * * * for an executory contract. * * * Where * * * the claimant has an honest and reasonable belief in the validity of an invalid claim, the relinquishment of such claim is sufficient consideration to support a promise." See also Duncan v. Black, Mo.App., 324 S.W.2d 483, 486[3]; State ex rel. St. Louis Shipbuilding & Steel Co. v. Smith, 356 Mo. 25, 201 S.W.2d 153, 157[5].

No issue of whether Fox had "an honest and reasonable belief in the validity of" his claim against Blanton was submitted to the jury and the evidence does not show as a matter of law that Fox could not or did not have a reasonable belief in the validity of a claim against Blanton. Viewed in the light most favorable to Fox and his fellow plaintiffs, the evidence shows that the intent surrounding the May, 1962, conversation and

letter between Blanton and Fox was to bring about a termination of Fox's agency in respect to his "obtaining any additional inquiries" and exerting "further efforts." There is no evidence to the effect that Blanton intended to do Fox out of any earned commission or that Fox then intended to waive any commission earned. It would have been simple enough for them to have so agreed or understood had that been their intention. It is reasonable to believe that they had no such intention because at the time neither of them had any idea that Fox's contact with Lehman-Drew was in the near future to "bear fruit." It is also reasonable to believe that Fox's authority was being thus terminated only in order for Burton to be the sole owner of any commission attributable solely to his efforts in a sale to a buyer procured after the termination of Fox's agency because Blanton admitted that they never discussed liability for Fox's past efforts and contacts. Certainly, there is no evidence which leads inevitably to a conclusion that Fox was, in May, 1962, waiving any commission which may have already accrued to him as a result of a contact made while his agency was in force. We cannot, therefore, say, as a matter of law, that Fox's claim against Blanton was neither honest nor reasonable at the time of his conversation with Burton on June 28, 1962, which led ultimately to the sale of The Blanton Company to Fox's contact, and the cases recognize the right of a broker to commissions on the consummation, after the termination of the brokerage employment, of a sale with one whom the broker regarded as his prospect, especially where the transaction was a result of the broker's effort. 12 Am.Jur.2d, Brokers, § 216; Axsom v. Thompson, 239 Mo.App. 732, 197 S.W.2d 326, 331[5]; Johnson v. Columbia Mortgage & Trust Co., Mo.App., 201 S.W. 365, 366 [1, 2]; Morton v. J. I. Case Threshing Machine Co., 99 Mo.App. 630, 74 S.W. 434, 436. Thus it is that Fox had sufficient claim against Blanton to forbear or waive as consideration for the alleged agreement with Burton.

Appellant contends (3), however, that whatever claim Fox might have had against Blanton ceased to exist when the employment was terminated in May, 1962. In support, he argues that the passage of time following Fox's contact with Lehman-Drew, taken with the doubt he expressed to Sternlieb June 28, 1962, whether Blanton was still for sale and his lack of activity from June 28 to October 29, 1962, established that any right he might have had to a commission did not survive the termination of his employment.

As stated in 12 Am.Jur.2d, Brokers, § 217, " * * * the right to commissions on a transaction consummated after expiration of the broker's employment has been denied where negotiations with the broker's prospect were interrupted for some time before consummation of the transaction with the prospect." See 27 A.L.R.2d 1379; Cole v. Crump, 174 Mo.App. 215, 156 S.W. 769, 771 [2]; Goffe v. Gibson, 18 Mo.App. 1, 4; Holbrook-Blackwelder Real Estate & Trust Co. v. Hartman, 128 Mo.App. 228, 106 S.W. 1115, 1117. In this case, however, appellant did not submit any such question and, as demonstrated, the facts do not preclude an honest and reasonable belief in the validity of Fox's claim as a matter of law. Appellant's citations are distinguishable from this case. In Loving Co. v. Hesperian Cattle Co., 176 Mo. 330, 75 S.W. 1095, plaintiff agent was denied a commission on a sale made to a buyer to whom plaintiff talked after termination of his agency, which is different from Fox's situation in that the sale of Blanton was made to a buyer contacted by Fox prior to termination of his agency. In Staehlin v. Kramer, 118 Mo. App. 329, 94 S.W. 785, and Dodge v. Childers, 167 Mo.App. 448, 151 S.W. 749, the issue of whether plaintiff's agency and right to commission had ceased by passage of time was submitted to the jury. La Force v. Washington University, 106 Mo.App. 517, 81 S.W. 209, is not in point because it involved a contract calling for performance within a limited time, and in such cases the agent is not entitled to commissions on efforts begun during the contract period which bear fruit only after expiration of the contract.

■ Appellant says that the parol evidence rule precludes any advantage plaintiffs may obtain from the conversation between Fox and Blanton respecting their intentions upon the termination of the agency because such constitutes an attack on the plain meaning of the May 11, 1962, letter. This is raised for the first time in appellant's reply brief, but it is unavailing in any event because there was no objection to the receipt of the conversation as well as the letter at the trial. Kimbrough v. Gross, Mo.App., 268 S.W.2d 56, 60 [9].

Was there evidence that Burton and Fox made an agreement to share a commission?

We have previously recited the express contract relied upon by plaintiffs in paragraph 9 of their petition. We have also stated Fox's version of his conversation with Burton on June 28, 1962, which is evidence that he and Burton agreed to share any commission made on a sale negotiated by Burton to a contact initiated by plaintiffs. The jury could then reasonably infer that when Fox so agreed he impliedly agreed concurrently to forego any claim he had to all of any commission earned upon consummation of a sale to a contact made by him prior to termination of his agency.

Burton says (B) that the contract was so indefinite and uncertain as to be unenforceable, Burger v. City of Springfield, Mo., 323 S.W.2d 777, Stephens v. Stephens, Mo.App., 264 S.W.2d 925, because it did not cover such things as what services Fox would perform in the future, length of term, what prospects Fox had initiated, whether Fox had a binding agreement with Blanton, and what provision was to be made for expenses. It is clear from the conversation and its context that Fox and Burton were agreeing to share 50-50 in the commission provision in Burton's own contract with Blanton, the terms of which were certainly

**336**

clear and specific to Burton, and none of the suggested omissions would void it or the agreement between Fox and Burton. Likewise, the conversation makes it clear that the sharing arrangement applied only to a sale to a prospect contacted by plaintiffs while they were Blanton's agents, and sale was consummated to the Drew Chemical Company with whom Fox initiated contact.

He says also that Fox's alleged waiver is disproved by Fox's claim against Blanton in Count II. That claim does not defeat nor destroy Count I, however, because it is not inconsistent with plaintiffs' theory that Fox had a reasonable belief that he had a claim against Blanton upon which to forbear in consideration of Burton's promise to share his commission, and the two counts were pleaded alternatively, as authorized by Civil Rule 55.12, V.A.M.R.

Appellant argues that the recital in the May 11, 1962, letter, "Our arrangement has therefore been terminated with no obligation upon either of us to the other," must be construed to have destroyed any claim that Fox had against Burton so that he had no claim to waive in the June 28th conversation with Burton. It is possible that such provision was so interpreted by the jury in respect to Fox's separate count against Blanton, but we are unable to say that as a matter of law, it destroyed any claim that Fox had to the extent he had no claim upon which to forbear in his arrangements with Burton.

The agreement said by Fox to have been made between him and Burton was, of course, denied by Burton, but this simply raised a conflict in the evidence which the jury resolved under appropriate instructions. Longmire v. Diagraph-Bradley Stencil Mach. Corp., Mo.App., 176 S.W.2d 635, 644 [4].

Accordingly, the judgment in favor of plaintiffs and against Burton should be affirmed and, since plaintiff Gerald L. Fox intended to appeal the judgment in favor of

Blanton on Fox's separate count only in the event the judgment against Burton was dissolved, it is unnecessary to discuss the merits of that appeal, and the judgment in all respects is affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM.

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All concur.