Devon CAMPBELL and Sue Fuge, d/b/a
Ridgeway Real Estate,
Plaintiffs-Respondents,

v.

Glen DIXON and Betty Dixon,
Defendants-Appellants.

No. 12807.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 17, 1983.

James E. Curry, Ava, for defendants-appellants.

Harold F. Glass, John G. Newberry, Schroff, Glass & Newberry, P.C., Springfield, for plaintiffs-respondents.

FLANIGAN, Presiding Judge.

Plaintiffs Sandra Sue Fuge and Devon Campbell, buyers under a written contract for the sale of land, brought this action for specific performance against defendants Glen Dixon and his wife Betty Dixon, sellers. Incorporated in the petition was a written contract, (the "second contract"), signed by the parties, dated March 13, 1980. The petition alleged that the agreed purchase price was $20,480; that plaintiffs had paid defendants $11,890 of the purchase price and were willing to pay the balance "as agreed under the contract," but that defendants had refused to deliver the deed conveying title "free from all liens and encumbrances, except that encumbrance described in the [second] contract."

Defendants' answer denied the allegations of the petition. Defendants also filed a two-count counterclaim. Count I of the counterclaim alleged that the plaintiffs and defendants had entered into a written contract, (the "first contract"), dated March 13, 1980, for the sale of the land; that the agreed purchase price was $25,650; that plaintiffs had paid $11,890 and that the balance ($13,760) was to be paid "at the rate of $3,000 per year, the first payment of principal due March 13, 1981, all deferred payments to bear interest at the rate of 8½ percent annually"; that the payment due *May* 13, 1981, was due and unpaid; that defendants asked judgment for the sum of $3,000 "plus interest from May 13, 1981, at 8½ percent per annum."

Count II of the counterclaim incorporated the allegations of Count I. Count II also alleged that the first contract was "vague, uncertain and ambiguous," and that "a controversy has arisen between the parties regarding their respective rights thereunder"; that "the 'proper construction' to be placed on the first contract is that set forth in Count I." The prayer of Count II was that the court "declare that the first contract is a contract for deed," that defendants have judgment for the unpaid May 13, 1981, payment of $3,000, together with interest, and that defendants be ordered to deliver plaintiffs a good and sufficient deed to the land "upon payment in full by plaintiffs."

Sitting without a jury, the trial court entered judgment on June 7, 1982, finding that the second contract was "the contract of the parties," that the agreed purchase price was $20,580 (sic), and that the balance owing by plaintiffs to defendants was $8,590, payable in annual principal payments of $3,000 plus interest at the rate of 8½ percent per annum from March 13, 1980. The judgment ordered "that plaintiffs immediately pay to defendants all sum now past due with interest and to pay all future sums when due and payable." The judgment ordered "that defendants, upon payment of all sums due, shall execute and deliver to plaintiffs a warranty deed to the property described above which shall be subject to any indebtedness owed to Goldie Letsinger." Defendants appeal.

Defendants assert that the trial court erred "in admitting parol evidence to establish the terms of [the second contract]" and that the second contract "standing alone is not specific as to consideration, time for payment, credit arrangements, and closing time." Defendants also assert that the trial court erred in granting specific performance of the second contract "because most of the terms of the second contract are too indefinite and ambiguous to enforce specifically and the decree varies from those portions of the contract that are plain and clear."

The land in controversy is a 90-acre tract[1] (the "north tract"), located in Douglas County on the north side of Prairie Hollow Road. Before the events litigated here, the north tract was owned by Goldie Letsinger, who also owned 254 acres (the "south tract") on the south side of Prairie Hollow Road. Plaintiffs Campbell and Fuge were partners in a real estate business ("Ridgeway Real Estate Agency") and they were interested in selling, as realtors, all 344 acres of the Letsinger land. Defendants Dixon were prospective purchasers.

Mr. Dixon himself had been in the real estate business. The Dixons were interested in buying only the south tract.

Ultimately the Dixons bought all 344 acres from Goldie Letsinger for a price of $117,000, which was paid by a down payment of $33,930 and the giving of a secured note, with a ten-year term, for the balance of $83,070.[2] The Dixons were not interested in acquiring the north tract and the plaintiffs were interested in seeing the Letsinger-Dixon transaction go through.

On March 13, 1980, plaintiffs and defendants signed the first contract which, all parties concede, contemplated the sale of the north tract by the Dixons to the plaintiffs. Apparently, at the time that document was executed, the parties were under the impression that the north tract had approximately 144 acres and the south tract had 150 acres. The first contract, with regard to the sale of the 144 acres, called for a price of $285 per acre. The parties later discovered that the north tract contained only 90 acres. It is on that basis that the Dixons claim that the purchase price, as contained in the first contract, was $25,650 (90 × $285).

On some date after March 13, 1980, perhaps several months later, the plaintiffs and defendants signed the second contract but dated it March 13, 1980. The second contract named the Dixons as the sellers and the plaintiffs as the buyers. The parties agree that the land being sold was the north tract. The second contract, like the first contract, was on a printed form used by Missouri realtors. The form contained blanks for the insertion of appropriate provisions.

■ Although the parties agree that they signed the first contract and the second contract, they disagree upon the circumstances which prompted the signing of the second contract. The plaintiffs' version,

1. The parties have agreed upon a legal description of the land, although the respective descriptions contained in the first contract and the second contract are probably inadequate. The brief of defendants says, "We make no issue of this point."

2. Although the Letsinger-Dixon documents are not in evidence, the parties generally agree upon the particulars of that transaction.

which the trial court believed, was that the second contract was entered into after the parties discovered the true acreage of the north tract, and that it was their mutual intention to rescind the first contract and replace it with the second. It was the testimony of the defendants, which the trial court rejected, that they had signed the second contract before any of its blanks had been filled in and that they did so because plaintiff Campbell had stated he needed their signatures "for audit purposes." Defendants testified that they had no intention of abandoning the first contract. The record fully supports the trial court's finding that the parties rescinded the first contract and replaced it with the second. The issue here is whether the second contract was specifically enforceable in the manner ordered by the trial court.

The disposition of this appeal is neither controlled nor affected by that portion of the statute of frauds, § 432.010,[3] which pertains to a contract "for the sale of lands ... or an interest in or concerning them." The statute of frauds is an affirmative defense, Rule 55.08, and it was not pleaded in defendants' answer. Some Missouri cases contain language to the effect that the mere failure to plead the statute constitutes a waiver of it. *Inloes v. Inloes,* 567 S.W.2d 732, 735[7, 8] (Mo.App.1978). Other Missouri cases have held, at least under some circumstances,[4] that the mere failure to plead the statute of frauds in the answer does not constitute a waiver of it if the party invokes the statute by objection to the introduction of oral evidence of the contract. *State v. Bland,* 353 Mo. 639, 183 S.W.2d 878, 886[8, 9] (Mo. banc 1944). See also *Karnopp v. Karnopp,* 387 S.W.2d 527, 530[3–6] (Mo.1965). In the instant case defendants failed to plead the statute of frauds and failed to object to evidence on the ground of the statute and this conduct waived any protection which the statute might have afforded. *Barr v. Snyder,* 294 S.W.2d 4, 10 (Mo.1956); *Braudis v. Helfrich,*

265 S.W.2d 371, 373[2, 3] (Mo.1954). See also *Jones v. Linder,* 247 S.W.2d 817, 819[1] (Mo.1952).

On the other hand defendants, on this appeal, may properly seek any protection which might be afforded them by the parol evidence rule. "The parol evidence rule is one of substantive law. It is not a rule of evidence. In a proper case for the application of the rule, even if the parol evidence be received without objection, it must be ignored." *Commerce Trust Co. v. Watts,* 360 Mo. 971, 231 S.W.2d 817, 820 (Mo.1950). To similar effect see *Hardin v. Ray,* 404 S.W.2d 764, 767 (Mo.App.1966). Although later Missouri cases appear to hold that the parol evidence rule may be waived by failure to invoke it by timely objection, *Fox v. Burton,* 402 S.W.2d 329, 335[2] (Mo.1966); *Kimbrough v. Gross,* 268 S.W.2d 56, 60[9] (Mo.App.1954), instant defendants did invoke the parol evidence rule by objecting, on that ground, to much of plaintiffs' evidence.

In *Hardin,* supra, the court summarized the parol evidence rule as follows: "[I]n the absence of fraud, duress, mistake or mental incapacity, an integrated unambiguous written contract may not be varied, altered or contradicted by parol or extrinsic evidence, and all prior or contemporaneous agreements are conclusively presumed to have been merged into the written contract, which 'itself becomes and is the single and final memorial of the understanding and intention of the parties.'" The court also pointed out that if the language of the instrument is "plain, explicit and certain" but also "erroneous or wrong," the latent ambiguity exception to the parol evidence rule does not apply and the remedy for the error, if the instrument fails to express the intention of the parties, is reformation to correct the mistake. The court also said, "Even under the latent ambiguity exception, parol or extrinsic evidence is permissible only to explain an ambiguity, not to

---

**3.** All references to statutes are to RSMo 1978, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

**4.** See 158 A.L.R. 89 (Manner of pleading statute of frauds as defense) and Mo. cases at pp. 114 and 120.

change or contradict the language of the written instrument."

The statement in *Hardin* concerning the "latent ambiguity exception" to the parol evidence rule is a reference to an ancient distinction, still occasionally made, between "patent" and "latent" ambiguities. A patent ambiguity is one "arising upon the face of the document," *Busch & Latta Painting v. State Highway Com'n,* 597 S.W.2d 189, 197 (Mo.App.1980), and a latent ambiguity "arises where a writing on its face appears clear and unambiguous, but there is some collateral matter which makes the meaning uncertain." 32A C.J.S. Evidence § 961, p. 427. Although some old Missouri cases contain language to the effect that parol evidence is inadmissible for the purpose of explaining a patent ambiguity in a written contract, e.g., *Campbell v. Johnson,* 44 Mo. 247 (1869), (and other cases appearing in Missouri Digest, Evidence, Key No. 451), later Missouri cases seem to ignore the distinction and permit the introduction of parol evidence, under appropriate circumstances, whether the ambiguity be patent or latent.[5]

In *Modine Manufacturing Co. v. Carlock,* 510 S.W.2d 462 (Mo.1974), the court dealt with a written franchise contract which was "ambiguous and uncertain with respect to several matters of importance." The language of the agreement itself was "ambiguous in many details." The court was dealing with an instrument containing patent ambiguities. The court said: "These ambiguities and omissions leave Exhibit 1 an incomplete memorial of the entire agreement existing between the parties. When ambiguities of this nature exist so that the full and complete intention of the parties cannot be ascertained from an examination of the written contract, and where the entire contract consists of something in addition to that expressed in the writing, extrinsic evidence is admissible to resolve the ambiguities, supplement the writing and complete an entire agreement, as long as that evidence is not contradictory of, repugnant to or inconsistent with the terms of the writing." The court also said, "the practical construction which the parties themselves place upon an agreement is of considerable significance in ascertaining the meaning of the terms of an ambiguous contract."

In *Grantham v. Rockhurst University,* 563 S.W.2d 147, 150 (Mo.App.1978), the court said: "In construing ambiguous contracts the objective is to ascertain and render effective the mutual intent of the parties; and to achieve this objective the court will consider the entire contract, subsidiary agreements, the relationship of the parties, the subject matter of the contract, the facts and circumstances surrounding the execution of the contract, the practical construction the parties themselves have placed on the contract by their acts and deeds, and other external circumstances which cast light on the intent of the parties ... so long as that evidence is not contradictory of, repugnant to, or inconsistent with the terms of the contract."

Citing *Biggs v. Moll,* 463 S.W.2d 881, 887 (Mo.1971), defendants argue that in order to justify specific performance, a contract must not be indefinite, uncertain or incomplete for the court will not make a contract

---

5. "The distinction between patent and latent ambiguities is gradually disappearing, and a tendency is manifested in the more recent cases to admit parol evidence even in cases of patent ambiguities; that is, parol evidence is held admissible to explain an ambiguity whether latent or patent." 30 Am.Jur.2d Evidence § 1073, p. 219.

"There is no sound basis for drawing such an arbitrary distinction [between latent and patent ambiguities], and that is the position which is now taken by most courts." Jones on Evidence, Fifth Edition, Vol. 2, § 489, p. 943.

See also Williston on Contracts, Third Edition, Vol. 4, § 627, p. 896, where it is said: "With the change of emphasis from form to content and judicial recognition of the principle that it was not the thaumaturgic quality of the word but the intention of the parties that was the lodestar of interpretation, courts have generally disregarded the distinction between latent and patent ambiguities; and they have thus indicated their concurrence in the view that it is 'an unprofitable subtlety.' "

See also 102 A.L.R. 287 ("Rule that latent ambiguities may be explained by parol evidence but that patent ambiguities may not.")

for the parties. Defendants also point to this language in *Wilkinson v. Vaughn,* 419 S.W.2d 1, 6 (Mo.1967): "The essential terms of a contract of the character sought to be enforced in this action are: (1) the parties; (2) the subject matter; (3) the promises on both sides; (4) the price; and (5) the consideration." [6]

Defendants concede that the second contract [7] adequately sets forth the subject matter and the promises upon both sides. Defendants argue, however, that the second contract is deficient with respect to the parties, the price and the consideration.

■ With respect to the parties, defendants concede that the second contract identifies defendants as the sellers but claim that there is uncertainty with respect to the identity of the buyers. Defendants point out that in the opening paragraph the buyers are identified as "C. Devon Campbell and Sandra Sue Fuge/Ridgeway Real Estate," and that at the bottom of the form, in the space calling for the signature of the buyer, plaintiff Campbell signed as follows: "Devon Campbell, d/b/a Ridgeway Real Estate." Defendants also point out that Sue Fuge, who was Campbell's partner in the real estate business, did not sign in the space calling for the signature of the buyer although she did sign on the line calling for the signature of the agent.

The down payment of $11,890 was made by check, payable to defendants. The check

6. The listing of "the consideration" and "the price" as separate "contents of memorandum" is found in Pomeroy's Specific Performance of Contracts, Third Edition, §§ 92 and 93, p. 228, in a discussion of "the written memorandum required by the statute of frauds." There the author says that there is "a plain distinction" between consideration and price but adds: "In the vast majority of contracts which are specifically performed by courts of equity, the price, and therefore the consideration, will be a material term of the agreement and must appear in the memorandum, which would be incomplete without such statement."

7. Among the provisions of the second contract were the following (the underlined portions were inserted, by hand writing, in the appropriate blanks):

"CONTRACT FOR THE SALE OF
REAL ESTATE

This contract, made and entered into this <u>13</u> day of <u>March</u>, 19<u>80</u>, by and between <u>Glen and Betty Dixon</u>, the Seller, and <u>C. Devon Campbell and Sandra Sue Fuge/Ridgeway Real Estate</u>, the Buyer. The terms Seller and Buyer may be either singular or plural according to whichever is evidenced by the signatures below.

The price for said property shall be <u>remainder on south side of Prairie Hollow Rd. to be at 380 per acre</u> Dollars; to be paid by the Buyer as follows: <u>$11,890.00</u> at the time of the execution and delivery of this contract, the receipt of which is hereby acknowledged by the Seller, and which is deposited with <u>Glen Dixon the Seller</u>, as agent for the Seller, as earnest money, and as a part of the purchase price and consideration for this agreement, and upon delivery of the deed as hereinafter provided, the Buyer shall pay the balance of the purchase price to Seller as follows: if Seller agrees to finance part of the purchase price as hereinafter set forth, then by delivering the note and deed of trust as hereinafter provided; or if Buyer is assuming and agreeing to pay the note secured by a deed of trust which is presently outstanding as hereinafter set forth, then by Buyer accepting delivery of a deed containing the assumption agreement; and by delivery to Seller the remaining balance of the purchase price, if any, in cash or by certified check."
. . .

"FINANCING AGREEMENT

(Only those paragraphs which are completed shall be applicable.)

A. The real property described above is subject to the lien of a first deed of trust on said property, securing the payment of a promissory note payable to <u>Goldie Letsinger</u> and bearing interest at the rate of ____ per cent per annum, with an unpaid balance of principal thereon as of the closing date of _____ and the Buyer will, on the closing date, as part of the purchase price, assume and agree to pay the actual remaining unpaid balance of said note.

B. Seller agrees to finance a part of the purchase price in the amount of <u>$8,590.00</u> to be evidenced by a negotiable purchase money promissory note in a form approved by Seller to be amortized in equal <u>ann.</u> installments over a period of _____ years bearing interest at the rate of <u>8½</u> per cent per annum and secured by a <u>1st</u> deed of trust in a form approved by Seller and covering the property described above. <u>$3,000 princ. & Int. annually.</u>

IN WITNESS WHEREOF, the parties hereto have executed this agreement the day and year first above written and acknowledged receipt of one copy of the contract.

| /s/ Devon Campbell, d/b/a | /s/ Betty Dixon |
| --- | --- |
| Ridgeway Real Estate | /s/ Glen Dixon |
| Purchaser | Seller |

Agent  <u>/s/ Sue Fuge-Ridgeway Real Estate</u>"

was drawn on the account of Ridgeway Real Estate Agency and signed by Sandra Sue Fuge. The ambiguity, if any, arising with respect to the identity of the buyers was clarified and resolved by the introduction of the check. Although Devon Campbell signed, on the purchaser's signature line, in an unorthodox manner, it seems clear that he was intending to act for the partnership. The record is clear that the purchase of the north tract was made with the knowledge and consent of his partner Sue Fuge who signed the check for the down payment. This court holds that the evidence is sufficient to show that it was the intention of the parties that the buyers were C. Devon Campbell and Sandra Sue Fuge, d/b/a Ridgeway Real Estate.

■ Defendants say, "There is no way to ascertain price by reading the second contract."

With respect to the price, the second contract contains a blank in which the price, stated in dollars, is to be inserted. The parties inserted, in handwriting, "remainder on south side of Prairie Hollow Rd. to be at 380 per acre." The fact is, and the parties concede, that the land being sold under the second contract was the north tract only. The situation was, however, that the Dixons bought both the north and south tracts from Goldie Letsinger in a contemporaneous transaction. The south tract contained 254 acres. The price of the south tract, in the Letsinger-Dixon transaction, computed at $380 per acre, was $96,520. The difference between $117,000, (the price of the 344 acres in the Letsinger-Dixon sale), and $96,520 is $20,480 which, in effect, is what the Dixons paid Letsinger for the north tract.

The second contract recites that the price to be paid by the buyer is $11,890 at the time of execution of the contract (and it was paid) and Financing Agreement B recites that the Dixons agree to finance $8,590 to be evidenced by a described note. The sum of $11,890 and $8,590 is $20,480. Thus there is no variance between the "remainder" language in the statement of the price and the price as determined by the sum of the two figures appearing in the two blanks. The use of the word "remainder" made it clear that the second contract was related to the sale of the south tract, although the latter was a separate transaction. This court holds that the price for the north tract, $20,480, was established by the second contract, considered in light of the circumstances.

■ On the element of consideration, defendants point to Financing Agreement A and state that the unpaid balance of the note held by Goldie Letsinger was $83,070. Defendants say, "Was the buyer to assume this amount and, if not, how much was the buyer to assume and at what time in the transaction was he to assume it."

This rhetorical question borders on the ludicrous. Even in this court defendants' brief takes the position (in reliance upon defendants' construction of the *first* contract) that plaintiffs were buying only the north tract and that the price was $25,650. Although the deed of trust given by defendants to Goldie Letsinger covered the north tract and the south tract, it would be remarkable indeed if the parties intended that the plaintiffs assume an additional liability of $83,070 with respect to both the south tract and the north tract when they were buying only the north tract which had a value in the $20,000 range. Moreover, the second contract provides, with respect to the financing agreements, "only those paragraphs which are *completed* shall be applicable." Financing Agreement A contains printed language, "The buyer will, on the closing date, as part of the purchase price, assume and agree to pay the actual remaining unpaid balance of said note." However, agreement A was not "completed." Two of its three blanks were left blank.

Defendants also point to Financing Agreement B, which calls for the securing of the buyer's note by a "*1st* deed of trust." It is true that agreement B, considered in light of its interlineations, was "completed." It is also true that the north tract and the south tract were subject to the lien of a first deed of trust securing the payment of a promissory note made by the Dixons in favor of Goldie Letsinger. That fact is

stated in the opening clause of Financing Agreement A. That fact is also derivable from the handwritten language reading, "remainder on the south side of Prairie Hollow Rd. to be at 380 per acre." At the trial defendant Dixon referred to the plaintiffs' purchase of the north tract and the Letsinger-Dixon purchase in this language: "It was all the same transaction."

The note given by the Dixons to Goldie Letsinger was in the amount of $83,070 and was payable over a term of ten years. The note which the plaintiffs were to give to the Dixons under Financing Agreement B would be paid in full at the time of the third annual payment, which means it would be paid while the Letsinger note and its deed of trust were outstanding. It is true that the Letsinger deed of trust covered both the north tract and the south tract while the deed of trust to be given under the second contract would cover only the north tract. The fact is, however, that the plaintiffs' note would not be secured by a first deed of trust because the north tract was already subject to the Letsinger deed of trust and would remain so.

There is a repugnancy between the "*1st deed of trust*" language of Financing Agreement B and the earlier portions, mentioned above, of the second contract. In rare cases Missouri courts have invoked the rule that where provisions of a contract are conflicting and cannot be reconciled, the provisions appearing first in the contract will prevail. *Larabee Flour Mills v. West Plains Commission Co.,* 216 Mo.App. 257, 262 S.W. 389, 391[1] (Mo.App.1924); *Drucker v. Western Indemnity Co.,* 204 Mo.App. 516, 223 S.W. 989, 991[3] (1920). It has been said that this principle of construction "is an expedient which a court will very reluctantly employ, usually resorted to when the subsequent clause has been carelessly introduced into the contract." *Herbert & Brooner Const. Co. v. Golden,* 499 S.W.2d 541, 548 (Mo.App.1973). See also 17 Am.Jur.2d Contracts § 267, p. 673; 131 A.L.R. 955 (Rule of priority in case of repugnant clauses in contract).

As a practical matter, at the time of remand, the entire balance of the purchase price will be due to the Dixons and there will be no necessity for the taking of a note and deed of trust. Under Rule 84.14 this court may "give such judgment as the court ought to give" and, further, "unless justice otherwise requires, this court shall dispose finally of the case." If plaintiffs were denied specific performance under the second contract, they would be entitled to restitution of the portion of the purchase price which they paid. *Jones v. Linder,* 247 S.W.2d 817, 826[13] (Mo.1952). Defendants' brief has asked this court to require a sale of the land, but for the price allegedly contemplated by the first contract.

Although the judgment was for the right parties it was incorrect in certain particulars. The agreed purchase price was $20,480 and not $20,580. At the time of entry of the trial court's judgment, not all of the purchase price balance, $8,590, was due but it will be due at the time of remand. Accordingly those portions of the trial court's judgment contemplating future payments must be modified. The judgment, as modified by the following instructions, is affirmed and the cause is remanded with instructions to the trial court to enter its order requiring the plaintiffs to pay into court for the use of defendants the sum of $8,590, together with interest thereon at the rate of 8½ percent per annum from and after March 13, 1980. After the money is deposited with the court, the court shall then order defendants to convey the north tract, subject to the lien of the deed of trust held by Goldie Letsinger, to plaintiffs or order that such title pass to plaintiffs without any act being necessary on the part of defendants, Rule 74.20. See *Shelton v. Julian,* 592 S.W.2d 551 (Mo.App.1980).

The cause is remanded for further proceedings consistent with this opinion.

GREENE, C.J., and TITUS and CROW, JJ., concur.